**Mary S. FRIES, Plaintiff, Appellant and Cross-Appellee,**

v.

**Jacob M. FRIES, Defendant, Appellee and Cross-Appellant.**

**Civ. No. 9682.**

Supreme Court of North Dakota.

Jan. 24, 1980.

Chapman & Chapman, Bismarck, for plaintiff, appellant and cross-appellee; argued by Daniel J. Chapman, Bismarck.

Freed, Dynes, Malloy & Reichert, Dickinson, for defendant, appellee and cross-appellant; argued by George T. Dynes, Dickinson.

PAULSON, Justice.

This is an appeal from a judgment of the Hettinger County District Court granting a divorce on the grounds of irreconcilable differences to Jacob M. Fries ["Jake"] and Mary S. Fries ["Mary"]. Mary raises three issues in her brief, and Jake has raised one issue on his cross-appeal. The issues raised are primarily concerned with the question of whether or not the district court erred in attempting to make an equitable division of the parties' marital property. We find no error and affirm the judgment of the district court.

This action was originally commenced against Jake by the filing of a summons and complaint on October 14, 1977, alleging that certain irreconcilable differences existed between Mary and Jake. The Hettinger County District Court issued its findings of fact, conclusions of law, and order for judgment on October 25, 1978. Judgment was entered on April 2, 1979.

Jake and Mary Fries were married on July 25, 1945, at Mott, North Dakota. Seven children were born as the issue of this marriage and all have attained legal age with the exception of Gerald, born on January 14, 1963.

Jake and Mary lived together on their farm near Mott until October of 1968, when Mary moved to Bismarck. Mary left the farm home the morning after she was beaten by Jake upon her return home late from an evening bowling and visiting with women friends. Mary testified that, although the incident which caused her to move from their home was the only time Jake had ever hit her, she lived in constant fear of him since that time.

Some ten months after the beating, Jake and Mary reconciled, although each continued to maintain a separate home. Jake would reside on the farm during the months when there was farm work to do, and he would live with Mary in her Bismarck residence in the winter months. This dual residence arrangement, the cost of which was in excess of Jake's and Mary's income, continued for several years.

On this appeal, Mary raises the following three issues:

(1) Where the trial court awarded a quarter section of land owned by the parties to Mary, but ordered that it be rented back to Jake at an amount making it economically impossible to sell the same, has an equitable division been achieved?

(2) Is the determination of the court with respect to property division clearly erroneous, particularly when it appears that no consideration has been given to the fact that the breakup of the marriage is clearly the fault of Jake?

(3) Where the trial court gave custody of the minor child to Mary, but only allows $75.00 for child support three months out of the year, is this an abuse of discretion?

On his cross-appeal, Jake raises the following issue:

(1) Did the district court err in failing to consider, in connection with the property settlement, the chose in action of Mary Fries for personal injury? In connection therewith was it error to deny the appellee's motion for interlocutory judgment made for the purpose of permitting the consideration

of said chose in action as one of the items of property owned by the parties and to be considered in the property settlement?

 An examination of the four issues reveals that three of the four issues raise the question of whether or not there was an equitable division of property made by the trial court. This court has said on several occasions that the question of whether or not an equitable division of property has been achieved is a question of fact. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D. 1979); *Hultberg v. Hultberg*, 259 N.W.2d 41 (N.D.1977); *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D.1977); *Kostelecky v. Kostelecky*, 251 N.W.2d 400 (N.D.1977); *Larson v. Larson*, 234 N.W.2d 861 (N.D.1975); *Bellon v. Bellon*, 213 N.W.2d 376 (N.D.1973); *Novlesky v. Novlesky*, 206 N.W.2d 865 (N.D. 1973). The findings of the trial court on the matter of property division will not be set aside unless clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure. As this court recently said, in *Nastrom, supra* 284 N.W.2d at 580:

"A particular finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Bender v. Bender*, 276 N.W.2d 695 (N.D.1979). *Bohnenkamp v. Bohnenkamp*, 253 N.W.2d 439 (N.D.1977); *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973).

"Our scope of review is thus limited by the clearly erroneous rule, and rightly so, for a judge present in the courtroom is in a much better position to ascertain the true facts by listening to and observing the demeanor of the witnesses than we are by reading the cold record."

 In dividing the marital estate, the trial court is governed by § 14–05–24, of the North Dakota Century Code, which provides:

"*14–05–24. Permanent alimony—Division of Property.*—When a divorce is granted, the court shall make such equi-

table distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

This court has also provided district courts with some guidelines to be used in dividing a marital estate. These guidelines are known as the *Ruff-Fischer* guidelines, named after the two cases from which they are taken. *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), and *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952).

In utilizing the *Ruff-Fischer* guidelines, the trial court

". . . may consider the respective ages of the parties to the marriage; their earning abilities; the duration of and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value and its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material." *Nastrom, supra* 284 N.W.2d at 581.

An examination of the record reveals that the trial judge was cognizant of the *Ruff-Fischer* guidelines, and applied them to the facts of this case. Therefore, we will not reverse the district court unless we are left with a firm conviction that a mistake has been made. *Bender v. Bender*, 276 N.W.2d 695 (N.D.1979).

■ The first issue raised is that the property settlement division was not equitable because the trial judge erred in awarding a certain tract of land to Mary but requiring Mary to lease it back to Jake and granting Jake an exclusive option to buy the same tract of land at a fixed price.

That specific part of the judgment provides:

"4. NE ¼ of Section 27–134–91, $40,-343.00, subject however to the following conditions—that Plaintiff [Mary] execute a lease to the Defendant [Jake] for a ten year period (on 160 straight acres) for a cash rental of $15.00 per acre for the first five years; and $17.50 per acre for the second five years; the Defendant [Jake] to have the option to buy the premises at any time at the rate of $233.00 per acre (this price per acre arrived at by looking at the professional appraisal [$265.00 crop, $155.00 pasture] and the Defendant's [Jake's] opinion [$200.00 per acre] and the average of the five quarters bought and sold in area as listed in appraiser's report [$233.00]); that if Defendant does not offer to buy at the $233.00 figure, the Plaintiff [Mary] may then offer it on the open market, but subject to Defendant's [Jake's] lease. On said purchase price the Defendant [Jake] to be given credit for all money paid under the lease as directed by the Court."

Mary argues that this provision awards her a quarter section of land and yet takes it away at the same time because of the restrictions placed on its use and sale. We disagree. Mary was awarded the quarter section of land at its presently ascertainable market value. The trial judge certainly was cognizant of the fact that the lease and option to buy limited the land's salability; but, nevertheless, he concluded that the restrictions were necessary to accomplish an equitable distribution of the marital property. We have said in the past that an equitable distribution does not have to be equal. *Hultberg, supra* 259 N.W.2d at 44; *Rambel v. Rambel*, 248 N.W.2d 856, 858 (N.D.1977); *Grant v. Grant*, 226 N.W.2d 358, 363 (N.D. 1975); *Novlesky, supra* 206 N.W.2d at 870. The determination of what is an equitable distribution lies within the sound discretion of the trial court. *Nastrom, supra* 284 N.W.2d at 580; *Piper v. Piper*, 239 N.W.2d 1 (N.D.1976). We conclude that this discretion was not abused by placing restrictions on the salability of the quarter section of land awarded to Mary.

■ The second issue raised is that the court should have considered that the breakup of the marriage was the fault of Jake. We disagree. This divorce was granted on the grounds of irreconcilable differences. Conduct of the parties is one of the *Ruff-Fischer* guidelines which the trial judge *may* consider. A review of the findings of fact indicates that the trial judge did consider fault. The incident in which Jake struck Mary took place in 1968. In 1969, the parties reconciled and lived together as a married couple. It appears that Mary's conduct was also considered partially responsible for the breakup of the marriage. It was Mary's insistence on maintaining a separate residence in Bismarck that led to financial difficulties in the marriage relationship. Mary and Jake were living far beyond their means. Taking these facts into consideration, as the trial judge did, it was not error for the trial judge to divide the property in the manner in which he did.

■ The third issue involving property division is the one raised by Jake in his cross-appeal. We agree with the finding of the trial court that a pending personal injury claim is far too speculative to include in a property division of a marital estate. Jake cites one Minnesota case to this court in which a personal injury award was considered in dividing the marital property. *Hoffman v. Hoffman*, 303 Minn. 559, 227 N.W.2d 387 (1975). In *Hoffman, supra*, the court considered the net proceeds of the settlement of a personal injury claim. In the instant case, Mary has a pending personal injury claim. There is no method by which a trial judge can place a monetary value on such a claim without engaging in conjecture and speculation. We do not know whether or not such claim may ever result in any monetary compensation to Mary. Therefore, the district court did not err in denying Jake's motion requesting that Mary's chose in action be considered in connection with the property settlement, nor did the court err in its order denying Jake's motion for an interlocutory order delaying the entry of the final decree of divorce. We will not consider whether or not an adjudicated or settled award of damages for personal injuries should be included in a property settlement division in a divorce action until such an issue is presented to this court.

■ The final issue raised by Mary involves the amount of support awarded for the minor child of the parties. The trial judge found that Jake and Mary were both fit parents entitled to custody of Gerald, and the court awarded custody to Jake and Mary jointly. Gerald is to live with Mary for nine months of the year and with Jake on the farm in the summer months. During the months that Gerald is with Mary, Jake must pay $75.00 per month for September, October, and November; and Mary must support Gerald entirely for the remaining six months that Gerald is in her custody.

Although Mary complains that she is unable to work because of her injuries, the record supports the trial judge's finding that she is capable of doing some kinds of work. The trial judge was aware of the fact that Jake also has his share of medical problems. The record discloses that both Jake and Mary are in considerable financial difficulties, due in large part to Mary's insistence on maintaining a separate residence for so many years. The findings of the trial judge regarding the respective abilities of Jake and Mary to pay the designated child support are amply supported by the record and we find no error in the manner in which the support obligations were apportioned. Rule 52(a), N.D.R.Civ.P.

Having considered the issues raised in light of the facts and circumstances of this case, we find no error in the judgment of the district court.

Affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.