173 N.J. Super. 130 (1980)
413 A.2d 638
PHYLLIS WEIR, PLAINTIFF,
v.
ROBERT WILLIAM WEIR, SR., DEFENDANT.
Superior Court of New Jersey, Chancery Division  Ocean County.
Decided February 21, 1980.
*131 Sheldon R. Franklin for plaintiff (Spitzer, Franklin & Keck, attorneys).
Nicholas C. Montenegro for defendant (Wilbert, Clyne & Montenegro, attorneys).
SERPENTELLI, J.S.C.
In this matrimonial action the parties ask the court by motion and stipulated facts to determine whether defendant's noncontributory pension fund which has not yet matured to a point where defendant is entitled to receive any benefits is subject to equitable distribution.
As will be more fully set forth below, the facts reveal that defendant's rights under the pension plan are subject both to certain conditions which have not occurred and to possible forfeiture in the event of death. In this respect, this case closely parallels the facts existing in Mueller v. Mueller, 166 N.J. Super. 557 (Ch.Div. 1979). In Mueller the court felt compelled *132 by the authority of Mey v. Mey, 79 N.J. 121 (1979), to hold that the pension was not subject to equitable distribution. I respectfully disagree that Mey requires this result and hold instead that the pension is subject to equitable distribution.
The parties were married on April 24, 1965. Defendant began working for Public Service Electric and Gas Company in January 1967, and that employment has continued to date. When defendant began employment he was over 22 years old. During the viable marriage he has been employed about 11 1/2 years. The essential elements of the employer's plan are as follows:
1. Each employee is an automatic participant in the noncontributory plan.
2. If the employee terminates employment after completing ten years of service after having attained the age of 22, he is eligible to receive a deferred pension at age 65 (normal retirement). If he terminates employment after 20 years of service beyond age 22, he can elect to begin receiving his deferred pension at age 60 (early retirement). He has various options to select from concerning the form of the pension.
3. If the employee becomes disabled after 12 1/2 years of service, he will receive a pension for the duration of his disability.
4. If the employee were to die before age 55 while receiving a disability pension, if unmarried, benefits would cease. If the employee was married at the time of death, joint and survivor annuity benefits would be payable to the surviving spouse on the date on which the employee would have attained the age of 55, unless a single life annuity had been previously selected, in which case, of course, benefits would cease at death.
5. The disability and pre-retirement survivorship options are not available to employees who terminate employment prior to retirement.
6. Neither the employee nor his beneficiaries are entitled to any benefits if the employee dies before retirement, unless death occurs while the employee is receiving a disability pension, having chosen a joint and survivorship annuity, or the employee has elected the pre-retirement survivorship option. That option may be elected at age 50 after completing at least 20 years of service and provides a reduced lifetime benefit to the surviving spouse.
7. The employee is not entitled to any lump sum payment from the plan in the event of termination of employment. However, if the employee has completed *133 ten years of service after having attained the age of 22 years (as in the case at bar), the employee is entitled to a deferred pension plan.
Before turning to the merits of this case, I must comment on two analytical deficiencies which have unnecessarily complicated the issues involved in the distribution of pension funds.
Many decisions addressing the law of equitable distribution as it relates to pensions have seized upon the concept of "vesting" as a primary criteria in determining whether the plan should be subject to distribution. The late Chief Justice Weintraub said in another context:
The companies stress the statement found in some cases that a utility's interest in the public easement is a `vested right.' Such labels may conceal as much as they reveal.... But rights come in different sizes, and hence it does not end the inquiry to find the companies hold something of that undefined stature. [Port of New York Authority v. Hackensack Water Co., 41 N.J. 90, 98 (1963); emphasis supplied]
The pension in this case is "vested" in the sense that defendant has met the threshold requirements for eligibility. He has had more than ten years of service beyond his twenty-second birthday. Yet uncertainty remains, for defendant may die before being permitted to receive any benefits or before his rights have matured by virtue of disability or the exercise of a pre-retirement option. In that event, his "vested right" evaporates.
The fact is that the concept of vesting, though embodied in the plan document itself, really has little meaning from the standpoint of the ultimate decision which must be made under N.J.S.A. 2A:34-23. Our equitable distribution statute requires that property be acquired during marriage to be subject to equitable distribution upon divorce. There is no requirement of vesting. McGrew v. McGrew, 151 N.J. Super. 515, 517 (App.Div. 1977). In the final analysis, one must determine whether a *134 property right has been acquired during the marriage and whether equity warrants its inclusion in the martial estate in light of its limitations. If deemed includable, the court must mold its judgment to assure a fair allocation of that right.
One can invoke the law of future interests to support an argument that a pension right is a mere "expectancy" until the right actually matures, in order to preclude its distribution. The adversary seeking inclusion will argue contract law. The employee's right, he will assert, derives from his contract of employment. Since a contractual right is not an expectancy, but a chose in action, it is a form of property. Our courts have required equitable distribution of a chose in action. Di Tolvo v. Di Tolvo, 131 N.J. Super. 72 (App.Div. 1974). Clearly, the spirit of the equitable distribution statute is not served by such legalisms.
This leads to the other conceptual approach which needs clarification. Ever since our earlier decisions determined that a pension fund can be subject to equitable distribution, many courts have applied rather traditional methods of allocation to an asset whose character differs from those usually found in the marital estate. Unless the pension fund payments are actually being received at the time of the divorce or the funds are then available for distribution, the allotment of the parties' rights in the prospective receipt of the funds is more difficult than the typical distribution of such things as bank accounts, stocks, bonds and the marital dwelling. The task of distribution should be made easier by recognizing the true nature of the asset.
Pension funds are wage substitutes, a form of deferred compensation. Were it not for the fact that our appellate decisions have opted to treat the funds as property which can be includable for equitable distribution purposes, a very strong argument could be made for the proposition that pension fund payments should be considered as income available for alimony and support purposes. If the funds were so treated and excludable from equitable distribution, it would simplify the equitable *135 distribution process immensely and the result could be every bit as fair. See Thayer v. Thayer, 409 A.2d 1326 (1979) wherein the New Hampshire Supreme Court has apparently approved of this approach. [1980] 6 Family L.Rep. [No. 10] 2158.
Given the state of our law, the trial court can at least shape its distribution of the pension funds to conform to the plan's essential purpose. The monies accumulated in a pension fund during the period of the marriage constitute compensation which both parties expect to have available upon retirement. Is it not appropriate for the court to calculate the interest in the fund acquired during marriage and provide for its distribution (along with its incremental value) at the time the funds become available? By doing so, we accomplish the purpose of the fund without requiring one spouse to pay out a portion of the monies not yet received. At the same time the other spouse is not compelled to accept a lesser interest because of payment prior to the normal distribution dates.
I do not mean to suggest that deferred distribution is the only acceptable alternative. Rather, I offer it as one example of a reasonable method of allocation which results from giving due recognition to the fact that we are distributing deferred wages. Indeed, there may be cases in which the trial court believes that the risks of total forfeiture of the pension rights are so remote that it would be appropriate to fix a present value and distribute a portion thereof to the nonpensioner spouse. The requirements of the pension fund, the needs of the parties, the ability to pay or set off the payment against another asset, and other factors may dictate such an outcome. However, if the court concludes that the uncertainties of payment under the plan do not warrant present division, it can allot to each spouse a fair portion of the pension fund as, if and when payments commence. It therefore becomes unnecessary to compute present value and the risk that no payments will ever be made because some condition is not met is shared by both parties.
*136 It is informative to note that the California Supreme Court, in rejecting its prior treatment of a "nonvested" pension fund as a "mere expectancy," has recommended the approach set forth in the preceding paragraph of this opinion. In re Marriage of Brown, 15 Cal.3d 838, 544 P.2d 561, 126 Cal. Rptr. 633 (1976).
Many of the earlier New Jersey opinions decided after the adoption of N.J.S.A. 2A:34-23 looked to the California decisions for guidance because of that state's long history of community property law. Tucker v. Tucker, 121 N.J. Super. 539 (Ch.Div. 1972); White v. White, 136 N.J. Super. 552 (App.Div. 1975); Corrigan v. Corrigan, 160 N.J. Super. 400 (Ch.Div. 1978).
In light of what I have said above it would appear that the result in the case before me should be a foregone conclusion. Indeed, it would be but for the decision of the Supreme Court in Mey v. Mey, 79 N.J. 121 (1979), and the trial court opinion in Mueller v. Mueller, 166 N.J. Super. 557 (Ch.Div. 1979). As noted, based on the authority of Mey, the Mueller court felt compelled to exclude a pension plan from equitable distribution notwithstanding its recognition of the inequity involved as it concluded:
This result may be undesirable from a social point of view, but it is mandated by the interpretation given to `legally and beneficially' by our Supreme Court. Perhaps the language of the statute should be reconsidered by the legislature. [166 N.J. Super. at 561]
I submit that Mey does not compel the conclusion reached in Mueller. Mey involved a question of distribution of a trust fund established for defendant before he had attained the age of 21. The accumulated income was to be paid at age 21 and thereafter current income was to be paid until defendant became 25, at which time the corpus would be distributed. Defendant married after his twenty-first birthday but before his twenty-fifth birthday, when the corpus was distributable. The Supreme Court held that defendant had legally and beneficially acquired the *137 corpus only upon attaining age 25, and since he was then married, plaintiff had an interest in the corpus for equitable distribution purposes. In so holding the court interpreted the word "beneficially" to mean "being subject to present enjoyment."
However, it is most significant to note that immediately following that definition the court said:
The susceptibility of an income interest to equitable distribution is not at issue in this case. Cf. Kruger v. Kruger, 73 N.J. 464, 468-69 (1977) (income interest subject to equitable distribution). We are concerned here only with the principal of the defendant's trust. [79 N.J. at 124 (1979); emphasis supplied]
Precisely what the Supreme Court meant by these two sentences is subject to debate. It can be argued that the Kruger case cited by the court involved a pension plan that had already matured in that payments were being received. In that respect the case before me and the Mueller case are clearly distinguishable from Kruger. However, even in the Kruger setting, the payments due in the future, while unquestionably payable, are not subject to "present enjoyment." Therefore, if the present enjoyment test of Mey is taken literally, future payments due under a matured plan could be excluded and Kruger would be implicitly overruled.
I submit that a more reasonable view of the above quotation supports the proposition that the Supreme Court was, in fact, confirming the validity of Kruger and recognizing the uniqueness of the pension fund asset. The court takes pains to tell us that it is not dealing with an "income interest" but rather with the principal of the trust. It applies future interest concepts in support of the result (79 N.J. at 125) which, I have contended, would not appear to have sound applicability in the framework of a pension case. Indeed, the quoted language supports a contrary result.
*138 Equity calls for inclusion of the plan in this case since defendant has already qualified for a pension benefit and he need merely live to collect it. Plaintiff has foregone the income with the same expectation as the husband.
An example of the inequity that could result under the approach taken in Mueller is to be found in In re Brown, 15 Cal.3d 838, 544 P.2d 561, 126 Cal. Rptr. 633 (1976). In that case the parties were married in 1950. Defendant participated in a plan in which the rights of the employees depended upon their accumulation of "points" based upon a combination of the years of service and the age of the employee. An employee discharged before acquiring 78 points forfeited his rights under the plan. When the parties separated in 1973 (after almost 24 years of marriage) defendant had accumulated 72 points, a substantial portion of which was attributable to work during the period the parties were married and living together.
Under prior California decisions the Supreme Court there would have held that the pension was not community property (or subject to equitable distribution in our jargon). Instead the court said:
We conclude that French v. French [17 Cal.2d 775, 112 P.2d 235], and subsequent cases erred in characterizing nonvested pension rights as expectancies and in denying the trial courts the authority to divide such rights as community property. This mischaracterization of pension rights has and unless overturned, will continue to result in inequitable division of community assets. Over the past decades, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services. As the date of vesting and retirement approaches, the value of the pension right grows until it often represents the most important asset of the marital community. [15 Cal.3d at 847, 544 P.2d at 566, 126 Cal. Rptr. at 638]
It should finally be noted that the inclusion of the pension fund interest in the distribution scheme serves one of the primary legislative purposes behind the adoption of the principle of equitable distribution. As our Supreme Court stressed in Rothman v. Rothman, 65 N.J. 219 (1974), it is vital that the *139 inherently precarious nature of alimony be protected as far as possible by an allocation of property which, among other things, could serve to replace the support should it falter or cease. What better security device could be provided than the certainty of pension fund payments should the pensioner's rights ultimately mature.
I am satisfied that the Mey decision does not mandate the exclusion of the fund payments from distribution in this case. Indeed, I find support in that opinion for inclusion of the asset. Therefore, I hold that defendant's interest is subject to equitable distribution. The method of allocation shall be determined after a plenary hearing is held.