505 A.2d 849

**William Edward UNKLE**

v.

**Gypsy Jo UNKLE.**

**No. 46, Sept. Term, 1985.**

Court of Appeals of Maryland.

March 12, 1986.

C. Michael Magruder, Towson, for appellant.

Elwood E. Swam, Hampstead, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

MURPHY, Chief Judge.

The Property Disposition in Annulment and Divorce Law, Maryland Code (1984), §§ 8–201 to 8–213 of the Family Law Article, defines "marital property" to mean

"the property, however titled, acquired by 1 or both parties during the marriage.

(2) 'Marital property' does not include property:
    (i) acquired before the marriage;
    (ii) acquired by inheritance or gift from a third party;
    (iii) excluded by valid agreement; or
    (iv) directly traceable to any of these sources."
    § 8–201(e).

The primary issue in this case is whether a spouse's inchoate personal injury claim which accrued during marriage is "marital property" within the contemplation of the statute.

## I.

William and Gypsy Unkle were divorced *a vinculo matrimonii* on October 11, 1984 by the Circuit Court for Carroll County. In its decree the court (Burns, J.) ordered that any monies realized by William "by and through a personal injury claim ... for injuries suffered at Wild World, Inc. in August 1983 ... are determined to be marital property." The court specified that William was to receive 80 percent and Gypsy 20 percent "of any recovery on the personal injury claim," to be distributed on an "if, as and when paid basis."

The evidence at trial showed that William suffered two broken legs in the accident, that he missed approximately seven and one-half months from work and accumulated medical expenses of $1,824.36. At the time of William's accident, he and Gypsy were separated. William resided with his parents during his period of recuperation. He said that he received no assistance from Gypsy during his convalescence. William retained an attorney to represent him in the personal injury case, but no suit had been filed prior to the issuance of the divorce decree.

William contended on his appeal to the Court of Special Appeals that the trial court erred in including his inchoate personal injury claim in its entirety as marital property. We granted certiorari prior to disposition of the appeal by the intermediate appellate court to consider the significant issue raised in the case.

## II.

Our cases have generally construed the word "property" broadly, defining it as a term of wide and comprehensive signification embracing " 'everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition.' " *Deering v. Deering*, 292 Md. 115, 125, 437 A.2d 883 (1981) (quoting *Diffendall v. Diffendall*, 239 Md. 32, 36, 209 A.2d 914 (1965)). In *Bouse v. Hutzler*, 180 Md. 682, 686, 26 A.2d 767 (1942), we said that the word "property," when used without express or implied qualifications, "may reasonably be construed to involve obligations, rights and other intangibles as well as physical things."

In *Deering*, we recognized a spouse's pension rights to be a form of marital property subject to equitable distribution. 292 Md. at 128, 437 A.2d 883. In that case, involving consolidated appeals, appellant wives appealed from decrees which denied them any monetary award based on their husbands' pensions which were unmatured, fully vested pension rights based on obligatory contributions deducted from their pay. *Id.* at 118–120, 437 A.2d 883. Citing *Weir v. Weir*, 173 N.J.Super. 130, 413 A.2d 638 (1980) and *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976) (en banc), we concluded that a spouse's pension rights, "to the extent accumulated during the marriage," constitute a form of "marital property" subject to distribution. 292 Md. at 128, 437 A.2d 883. In so holding, we noted that regardless of the type of retirement plan, vested or unvested, noncontributory or contributory, the critical issue was "whether a property right has been acquired during the marriage and whether equity warrants its

inclusion in the marital estate in light of its limitations."
*Id.* at 127, 437 A.2d 883 (citing *Weir, supra,* 413 A.2d at
640). We said that as

" 'pension benefits represent a form of deferred compen-
sation for services rendered, the employee's right to such
benefits is a contractual right, derived from the terms of
the employment contract. Since a contractual right is not
an expectancy but a chose in action, a form of property,
... an employee acquires a [judicially recognized] proper-
ty right to pension benefits when he enters upon the
performance of his employment contract.' " *Id.* [292 Md.]
at 127, 437 A.2d 883 (citing *Brown, supra,* 126 Cal.Rptr.
at 637, 544 P.2d at 565).

In *Archer v. Archer,* 303 Md. 347, 493 A.2d 1074 (1985),
we held that a medical degree/license does not constitute
marital property within the ambit of § 8–201(e). We there
indicated that only a mere expectancy of future enhanced
income resulted from the attainment of a professional de-
gree; that it was but an intellectual attainment, personal to
the holder, which had no exchange value on an open market
and could not be sold, transferred, pledged, assigned or
inherited. We said that such a degree simply did not
possess any of the basic characteristics of property.

### III.

While we have never determined whether a personal
injury claim accruing during marriage constitutes marital
property under § 8–201(e), other jurisdictions have con-
sidered the question under statutes of varying import and
with varying results. Some courts have flatly concluded
that a personal injury award or settlement is not marital
property but rather the sole and separate property of the
injured spouse. *See, e.g., Johnson v. Johnson,* 75 N.C.App.
659, 331 S.E.2d 211 (1985) (purpose of the statute is to
require married persons to share their maritally acquired
property with each other and not to require either party to
contribute his or her bodily health obtained prior to mar-
riage to the marital assets subject to distribution); *Gloria*

*B.S. v. Richard G.S.,* 458 A.2d 707 (Del.Fam.Ct.1983) (workmen's compensation benefits for loss of an eye and disfigurement acquired by husband during the marriage not marital property subject to equitable distribution; husband's body is separate property and compensation received for damage or loss to it is his separate property). Other courts have concluded that an unliquidated personal injury claim which is merely pending at the time of the divorce, and therefore not then susceptible of division, cannot be marital property because of its speculative nature. *See, e.g., McNevin v. McNevin,* 447 N.E.2d 611 (Ind.App.1983); *Fries v. Fries,* 288 N.W.2d 77 (N.D.1980); *Hurley v. Hurley,* 342 Pa.Super. 156, 492 A.2d 439 (1985).

New Jersey courts have held that potential damages in a personal injury case for pain and suffering, loss of earnings, and medical expenses constitute a chose in action and, as such, are marital property acquired by the injured spouse during the marriage under that state's statute, subject to equitable distribution if and when the proceeds materialized. *Landwehr v. Landwehr,* 200 N.J.Super. 56, 490 A.2d 342 (1985); *Harmon v. Harmon,* 161 N.J.Super. 206, 391 A.2d 552 (1978); *DiTolvo v. DiTolvo,* 131 N.J.Super. 72, 328 A.2d 625 (1974). According to *Little v. Little,* 74 N.C.App. 12, 327 S.E.2d 283, 287–88 (1985), this is the majority rule, *i.e.,* that claims and awards for personal injuries resulting from occurrences during the marriage are marital property, unless the statute provides that such claims are the separate property of the injured spouse. *In re Marriage of Fjeldheim,* 676 P.2d 1234, 1236 (Colo.App.1983) holds that a personal injury settlement offer as compensation for pain and suffering is marital property if it arises from an accident which occurred during the marriage. *Gan v. Gan,* 83 Ill.App.3d 265, 38 Ill.Dec. 882, 404 N.E.2d 306 (1980); *Nixon v. Nixon,* 525 S.W.2d 835 (Mo.Ct.App.1975); *Platek v. Platek,* 309 Pa.Super. 16, 454 A.2d 1059 (1982) clearly support this conclusion.

*Amato v. Amato,* 180 N.J.Super. 210, 434 A.2d 639 (1981), another New Jersey intermediate appellate court case, de-

cided after *DiTolvo* but before *Landwehr*, reached a different result. That case involved a spouse's unliquidated claim for medical malpractice. The court concluded that an inchoate personal injury claim, not being saleable or assignable prior to judgment, is not a property right. Instead, the money received for the claim is "the legal substitute for pain, suffering and the mental and physical disabilities incurred." 434 A.2d at 642. The right, the court said, is peculiar to the injured person, to seek to be restored or made whole, as he was before the injury. As to this, the court held that "monies realized by way of settlement or judgment from a tortfeasor as compensation for pain, suffering, disfigurement, disability or other debilitation of the mind or body, represent personal property of the injured spouse not distributable under [the New Jersey marital property statute]." 434 A.2d at 643–44. But as to "[l]osses, such as past wage and medical expenses, which have diminished the marital estate," the court held that such losses "are distributable when recovered." *Id.*, 434 A.2d at 644. Finally, *Amato* said that the law does not require a plaintiff to receive a lump sum verdict encompassing pain, suffering, medical expenses and lost wages. Consequently, it noted that "[s]pecial jury interrogatories may be utilized to delineate the separate factors of recovery." *Id.*

Rationale similar to that of *Amato* has been applied in a number of cases. *See, e.g., Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812 (1980); *Cook v. Cook*, 102 Idaho 651, 637 P.2d 799 (1981); *Van De Loo v. Van De Loo*, 346 N.W.2d 173 (Minn.Ct.App.1984); *Soto v. Vandeventer*, 56 N.M. 483, 245 P.2d 826 (1952); *Rich v. Rich*, 126 Misc.2d 536, 483 N.Y.S.2d 150 (1984); *Brown v. Brown*, 100 Wash.2d 729, 675 P.2d 1207 (1984). These cases generally look to the purpose of the recovery: if it was intended to compensate for noneconomic loss, *e.g.*, pain and suffering, it is not marital property, while if it was for economic loss, *e.g.*, lost wages and medical expenses, it constitutes marital property. The premise underlying this approach was well explained by the

Supreme Court of Washington in *Brown, supra,* 675 P.2d at 1211:

> "But what or who has been injured? It is the marital community or is it the separate individuality of the spouse? In actuality, both. The physical injury to the spouse, the pain and suffering of the spouse therefrom is an injury to the spouse as an individual. . . . But on the other hand, if the injury deprives the marital community of the earnings or services of the spouse, that is an injury to the marital community; likewise there is loss to the community where the community funds are expended for hospital and medical expenses, etc.' "
>
> (quoting W. deFuniak & M. Vaughn, *Principles of Community Property* § 82, at 201–03 (2d ed. 1971)).

While Washington, unlike Maryland, is a community property state, the principle involved is the same—it focuses upon the costs incurred by the couple as a result of the injury and any diminution to either the community or marital property. Such diminution, if any, will occur in the same manner whether the couple resides in a community property or equitable distribution state.[1]

## IV.

An unliquidated tort claim for money damages for personal injuries is encompassed within the definition of a chose in action. *See* Black's Law Dictionary 219 (5th ed.

---

1. At least three jurisdictions have enacted statutes specifically addressing the treatment of personal injury awards or settlements in a divorce context. *See, e.g.,* Cal.Civ.Code § 4800(c) (Deering 1984, Cum. Supp.1986) ("[C]ommunity property personal injury damages shall be assigned to the party who suffered the injuries unless the court . . . determines that the interests of justice require another disposition. . . . [A]t least one-half of the damages shall be assigned to the party who suffered the injuries."); N.Y.Dom.Rel.Laws § 236 B(1)(d)(2) (McKinney 1979, Cum.Supp.1985) ("The term separate property shall mean: . . . compensation for personal injuries."); Tex.Fam.Code Ann. § 5.01(a)(3) (Vernon 1975) ("A spouse's separate property consists of: . . . (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.").

1979) (a chose in action is a personal right not reduced to possession but recoverable by a suit at law, including a suit for damages in tort). Cases to this effect are collected in 7 *Words and Phrases* "Chose In Action" at 164, *et seq.* (1952, Cum.Supp.1985). Assuming arguendo that a personal injury claim may be a chose in action and technically assignable as such, see *Summers v. Freishtat,* 274 Md. 404, 335 A.2d 89 (1975) and Annot., *Assignability of Claim for Personal Injury or Death,* 40 A.L.R.2d 500 (1955), nevertheless the mere fact of assignability of such a claim does not mean that it constitutes "marital property" in the sense contemplated by the legislature in its enactment of the Marital Property Statute.

We have extensively reviewed the statute and its underlying history, as reflected in the Report of the Governor's Commission on Domestic Relations Laws (1978), in a number of recent cases. *See, e.g., Archer, supra,* 303 Md. at 351–52, 493 A.2d 1074; *Grant v. Zich,* 300 Md. 256, 267–68, 477 A.2d 1163 (1984); *McAlear v. McAlear,* 298 Md. 320, 343, 469 A.2d 1256 (1984); *Harper v. Harper,* 294 Md. 54, 62–64, 448 A.2d 916 (1982); *Deering, supra,* 292 Md. at 122, 437 A.2d 883. Suffice it here to note that the statute indicates that nonmonetary contributions within a marriage should be recognized in the event that a marriage is dissolved; that a spouse whose activities do not include the production of income may nevertheless have contributed toward the acquisition of property by either or both spouses during the marriage; that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration given to both monetary and nonmonetary contributions made by the respective spouses; and that the accomplishment of these objectives necessitates that there be a departure from the inequity inherent in Maryland's old "title" system of dealing with the marital property of divorcing spouses. Underpinning these concepts and their application is the explicit recognition in the Commission Report that the equitable distribution of property upon divorce is grounded in the duty of each spouse to contribute his or her best efforts to

the marriage for the benefit of the family unit (p. 3); that in the great majority of cases the property subject to distribution consists only of the family home, its contents, an automobile and, in an unusual case, "other investments of consequence" (p. 4); and that the objective in enacting an equitable distribution statute was to define the rights of divorcing spouses so as to "correct those inequities that uncorrected historical development of the law had wrought" (p. 14).

In view of the aforegoing, we do not think that any part of William's unliquidated personal injury claim fits within the legislatively intended definition of marital property in § 8–201(e). On the contrary, the claim is uniquely personal to the holder. And while it may have some attributes of personal property, the claim was not, within the ambit of the statutory language, "acquired" during the marriage by one or both spouses. It arose from purely fortuitous circumstances and not from any on-going marital initiative to acquire marital assets. The claim simply accrued to the injured spouse as a result of an accident and was his separate property. Nothing in the statute suggests that the General Assembly intended that such a claim would constitute marital property subject to equitable distribution upon divorce by a monetary award. In so concluding, we recognize that the statute's broad purpose requires that it be liberally construed to protect the interest of a spouse who makes nonmonetary contributions during the marriage. *Harper v. Harper, supra,* 294 Md. at 64, 488 A.2d 916. As we have said, however, the claim is simply not the type of resource contemplated by the statutory definition of marital property even though, in part at least, payment of the claim would produce monies which would replenish marital assets previously diminished through payment of medical expenses and the loss of wages.

## V.

William also contends that the chancellor erred in setting child support for his three minor children. At the time of

the hearing, William's *pendente lite* child support consisted of medical and dental insurance for the children, payment of the Gas and Electric bills incurred at the marital residence and one-half of the mortgage payment on the marital home ($128.32). The chancellor ordered William to continue such child support payments until the marital home was sold, after which William was ordered to pay child support in the amount of $50 per child per week. William suggests that the chancellor abused his discretion in setting the new amount in the absence of knowledge respecting the financial circumstances of the parties at the time of the sale of the marital home.

■ It is undisputed that a chancellor may modify child support payments, whether by way of reduction or increase, if it is affirmatively shown that there is a material change in the needs of the children or in the parents' ability to provide support. *See Jackson v. Jackson,* 272 Md. 107, 321 A.2d 162 (1974); *Wooddy v. Wooddy,* 258 Md. 224, 265 A.2d 467 (1970); *Reese v. Huebschman,* 50 Md.App. 709, 440 A.2d 1109 (1982); § 1–201 of the Family Law Article. In determining the proper amount of support, the chancellor must balance the best interests and needs of the child with the parents' financial ability to meet those needs. *Rothschild v. Strauss,* 257 Md. 396, 263 A.2d 511 (1970); *Wagshal v. Wagshal,* 249 Md. 143, 238 A.2d 903 (1968); *Holston v. Holston,* 58 Md.App. 308, 473 A.2d 459 (1984). Factors which should be considered when setting child support include the financial circumstances of the parties, their station in life, their age and physical condition, and expenses in educating the children. *See Bowis v. Bowis,* 259 Md. 41, 267 A.2d 84 (1970); *Chalkley v. Chalkley,* 240 Md. 743, 215 A.2d 807 (1966); *Newmeyer v. Newmeyer,* 216 Md. 431, 140 A.2d 892 (1958); *Kramer v. Kramer,* 26 Md.App. 620, 339 A.2d 328 (1975).

■ We think the *in futuro* modification of the child support order failed to account for any of these factors. Indeed, the chancellor had no way of knowing when the

marital home would be sold, its sales price, or the amount of profit, if any, to each party. We therefore conclude that the chancellor erred in setting child support at $50 per week per child, to begin after the sale of the marital residence. This determination should be made after the sale of the marital home when all the relevant facts and circumstances can be examined in order to fix the appropriate amount of child support to be paid by William.

DECREE VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.