Lincoln G. BOYCE, Appellant,

v.

Daisy Taylor BOYCE, Appellee.

No. 85–1535.

District of Columbia Court of Appeals.

Argued March 24, 1987.
Decided May 11, 1988.

---

A. Palmer Ifill, Washington, D.C., for appellant.

Glenn H. Carlson, with whom Diane E. Cafferty, Washington, D.C., was on the brief, for appellee.

Before TERRY, ROGERS* and STEADMAN, Associate Judges.

TERRY, Associate Judge:

In this divorce case, we consider a question of first impression in the District of Columbia: whether an inchoate personal injury claim is marital property or the separate property of the injured spouse. The trial court chose the latter alternative. We disagree, and accordingly we reverse that portion of its judgment.

### I

After twenty-one years of marriage, Lincoln and Daisy Boyce went their separate ways. The couple had split up and reconciled on previous occasions, but in June 1982 they separated permanently, and in October 1985 they were divorced. During their marriage Mrs. Boyce worked as a registered nurse for various hospitals in the Washington area, and Mr. Boyce drove a taxicab, although he had a bachelor of science degree in zoology from a local university. The Boyces had two children, Che-

ryl and Leighton. At the time of the divorce, Cheryl was attending a private high school, and Leighton was in his third year of college.

In March 1984 Mrs. Boyce was severely injured in an automobile accident. Her injuries resulted in permanent disability, and she now receives $834 per month in disability retirement payments. When the divorce was granted in this case, however, she had not yet settled her personal injury claim. In fact, she had not yet filed a claim for lost wages with her insurance company, although she fully expected to do so.

In dividing the marital property,[1] the court ruled that Mrs. Boyce's inchoate personal injury claim was not a marital asset because there was "no way of valuing it." Furthermore, her pain and suffering from this accident were "intensely personal," and any recovery for pain and suffering should therefore belong solely to Mrs. Boyce. Finally, the court said, Mr. Boyce could not expect any recovery for loss of consortium resulting from Mrs. Boyce's injuries since the couple had separated before the accident.[2]

### II

The major issue presented on this appeal, and the only one we decide, involves Mrs. Boyce's potential recovery for the injuries she sustained in the March 1984 automobile accident. Mr. Boyce argues that this inchoate claim was marital property, and that the trial court erred in holding that it was Mrs. Boyce's separate property.

The issue of whether an inchoate personal injury claim is marital property or sepa-

---

* Senior Judge Pair was a member of the division that heard oral argument. He later withdrew from the case, and Judge Rogers was chosen by lot to replace him.

1. The Boyces purchased a home in 1971. Although Mrs. Boyce provided most of the down payment and settlement costs, which totaled approximately $10,000, the trial court found that Mr. Boyce also contributed $2,000. Mrs. Boyce took complete responsibility for the mortgage payments, and by the time of the divorce the mortgage was completely paid. The trial court found, however, that Mr. Boyce contributed $25

or $30 per week to the household expenses, and that he also made various non-financial contributions, such as driving Mrs. Boyce and the children in his taxicab. Considering these facts and other evidence of Mr. Boyce's income, the court awarded Mrs. Boyce a seventy-five percent share and Mr. Boyce a twenty-five percent share of the marital home.

2. Mrs. Boyce was also not required to share her disability retirement benefits with Mr. Boyce, nor was she ordered to pay him alimony, which he requested.

rate property has never been decided by this court.[3] The appropriate starting point for our analysis is the statute which governs the distribution of property in divorce cases. D.C.Code § 16–910 (1981) provides in pertinent part:

> Upon the entry of a final decree of annulment or divorce in the absence of a valid antenuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:
>
> (a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and
>
> (b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to [several listed factors].

Under this statute, if a husband and wife have assets which do not fall within the specific definition of "sole and separate property," those assets are deemed to be marital property and thus subject to distribution by the court in accordance with subsection (b). Our task, then, is to determine the category in which to place Mrs. Boyce's inchoate tort claim.[4]

That task is made easier by the language of the statute. Mrs. Boyce's claim arose during the Boyces' marriage, but it was not acquired "by gift, bequest, devise, or descent. . . . or . . . in exchange therefor. . . ." D.C.Code § 16–910(a). Accordingly, since it does not fit within the definition of sole and separate property, we hold that the inchoate claim was marital property, and that the trial court's ruling to the contrary was erroneous.[5]

We find support for our holding in the decisions of other courts which, in applying "equitable distribution" statutes similar to ours, have also ruled that inchoate personal injury claims arising during a marriage are marital property. *E.g., In re Burt*, 144 Ill.App.3d 177, 178–179, 98 Ill.Dec. 746, 747, 494 N.E.2d 868, 869 (1986); *Heilman v. Heilman*, 95 Mich.App. 728, 729–733, 291 N.W.2d 183, 184–185 (1980); *Di Tolvo v. Di Tolvo*, 131 N.J.Super. 72, 77–79, 328 A.2d 625, 628 (1974).[6] The *Burt* case, for exam-

---

**3.** Both parties rely almost exclusively on cases from other jurisdictions. The one District of Columbia case which Mrs. Boyce cites on this point, *Lansburgh & Bro., Inc. v. Clark*, 75 U.S. App.D.C. 339, 127 F.2d 331 (1942), does not apply here. *Lansburgh* dealt with a husband's right to sue, jointly with his wife, the tortfeasor who caused his wife's injuries. No divorce was involved, and the distribution of the couple's marital property was therefore never discussed.

**4.** Preliminarily, we conclude that Mrs. Boyce's inchoate claim is property, and thus subject to distribution under section 16–910. Most authorities state that a right to sue someone for personal injuries is a "chose in action"—a type of intangible personal property. "The term 'chose in action'. . . . applies generally to rights of action arising out of tort as well as contract, whether such right of action is for an injury to the person or to property." 73 C.J.S. *Property* § 22 (1983) (footnotes omitted); *see also Galarza v. Union Bus Lines, Inc.*, 38 F.R.D. 401, 404 (S.D.Tex.1965), *aff'd*, 369 F.2d 402 (5th Cir. 1966); *Carver v. Ferguson*, 115 Cal.App.2d 641, 254 P.2d 44, 45 (1953); *Moore v. Nassau County Dep't of Public Transportation*, 78 Misc.2d 1066,

1070–1071, 357 N.Y.S.2d 652, 657 (N.Y.Sup.Ct. 1974).

**5.** Nothing in our decision today alters the well-settled rule that "unenforceable expectations" are not marital assets. An expectation of inheritance, for example, is unenforceable and thus cannot be marital property. *Gassaway v. Gassaway*, 489 A.2d 1073, 1076 (D.C.1985). In contrast, a chose in action, such as an inchoate personal injury claim, is by definition an enforceable right, and is thus property subject to distribution in a divorce proceeding. See note 4, *supra*.

**6.** When the classification of a personal injury award *received by the injured spouse prior to the divorce* is at issue, most courts applying equitable distribution statutes have ruled that the entire award is marital property. *E.g., Liles v. Liles*, 289 Ark. 159, 168–170, 711 S.W.2d 447, 452 (1986); *In re Fjeldheim*, 676 P.2d 1234, 1236 (Colo.Ct.App.1983); *Gan v. Gan*, 83 Ill.App.3d 265, 268–270, 38 Ill.Dec. 882, 885, 404 N.E.2d 306, 309 (1980); *Nixon v. Nixon*, 525 S.W.2d 835, 839 (Mo.Ct.App.1975); *Maricle v. Maricle*, 221 Neb. 552, 553–554, 378 N.W.2d 855, 857

ple, involved a husband who, after filing for divorce, was seriously injured in an automobile accident. By the time the divorce was granted, the husband had not yet settled his personal injury claim. The court ruled that, notwithstanding the contingent nature and the non-assignability of that claim,[7] it was nevertheless property. Furthermore, since it did not fall within the statutory definition of separate property, the inchoate claim was a marital asset. 144 Ill.App.3d at 181–182, 98 Ill.Dec. at 749, 494 N.E.2d at 871.

*Di Tolvo* also involved a tort claim that was not resolved until after the divorce. The trial court, faced with distributing a property interest of unknown value, simply allocated a fixed percentage of any future recovery to each spouse. On appeal, the trial court's distribution scheme was upheld with only minor modifications not relevant here. 131 N.J.Super. at 82–83, 328 A.2d at 631. Similarly, *Heilman* dealt with a husband's product liability claim which was unresolved at the time of the divorce. The trial court ordered the proceeds, if any, from this claim to be put in escrow, with the final distribution of the recovery to be determined at a later hearing. In upholding that ruling, the Michigan Court of Appeals relied on *Di Tolvo* for the proposition that the husband's cause of action was marital property. 95 Mich.App. at 731–733, 291 N.W.2d at 185.[8]

In sum, we hold that Mrs. Boyce's inchoate personal injury claim was marital property, and that the trial court's decision to

the contrary must therefore be reversed. On remand, however, the trial court is not obligated to grant Mr. Boyce a share in the future proceeds from Mrs. Boyce's claim. *See Barbour v. Barbour*, 464 A.2d 915, 921–922 (D.C.1983) (affirming trial court's decision not to award husband a share of his wife's pension). Instead, the court must simply consider this claim as a marital asset, along with all of the other marital assets, when determining the relative property rights of the parties.

### III

We recognize that some courts in other jurisdictions, wrestling with the same issue facing us today, have reached different conclusions. For various reasons, however, we decline to follow their lead.

Some courts apply what is known as the "analytic" approach. This method, which originated in community property states, finds both separate and marital property elements in the inchoate claim. *See Jurek v. Jurek*, 124 Ariz. 596, 598, 606 P.2d 812, 814 (1980); *Brown v. Brown*, 100 Wash.2d 729, 738–739, 675 P.2d 1207, 1213 (1984). To date, only one court in an equitable distribution state has applied the analytic approach to an inchoate claim. *Amato v. Amato*, 180 N.J.Super. 210, 434 A.2d 639 (1981) (rejecting the holding of *Di Tolvo, supra*, that such a claim is entirely marital property).[9] Under the analytic approach, any recovery for lost wages or medical expenses paid with marital funds is classified as marital property; these damages

---

(1985); *Landwehr v. Landwehr*, 200 N.J.Super. 56, ——, 490 A.2d 342, 344 (1985); *Platek v. Platek*, 309 Pa.Super. 16, 20–24, 454 A.2d 1059, 1061–1062 (1982); *Bero v. Bero*, 134 Vt. 533, 534–535, 367 A.2d 165, 167 (1976).

**7.** An inchoate tort claim is not assignable. *Lamont v. Washington & G.R.R.*, 13 D.C. (2 Mackey) 502, 507 (1883). *See generally* Annotation, *Assignability of Claim for Personal Injury or Death*, 40 A.L.R.2d 500, 502 (1955).

**8.** Mrs. Boyce contends that *Heilman* is distinguishable here because both the husband and wife in that case were parties to the product liability action, whereas Mr. Boyce is not a co-party to Mrs. Boyce's personal injury claim. This distinction is meaningless. The classification of a cause of action as separate or marital property does not hinge on whether the spouses

are joint plaintiffs, but on whether the claim arose during the marriage and falls outside the statutory definition of separate property. *See* 2 VALUATION & DISTRIBUTION OF MARITAL PROPERTY § 23.07[1][a] (J. McCahey ed. 1987).

**9.** With respect to settled personal injury claims, several courts in equitable distribution states have adopted the analytic approach. *E.g., Gloria B.S. v. Richard G.S.*, 458 A.2d 707, 708 (Del. Fam.Ct.1982); *Campbell v. Campbell*, 255 Ga. 461, 462–463, 339 S.E.2d 591, 593 (1986); *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 176 (Minn.Ct.App.1984). However, the analytic approach is the acknowledged minority rule in such states. *Johnson v. Johnson*, 317 N.C. 437, 450–452, 346 S.E.2d 430, 438 (1986).

constitute the actual loss of marital property resulting from the injury. On the other hand, recovery for pain and suffering and for the physical injury itself is classified as separate property; these elements of the inchoate claim are viewed as either falling outside the definition of property, *Amato v. Amato, supra,* 180 N.J.Super. at ——, 434 A.2d at 642, or as an exchange for the injured spouse's separate property, *viz.,* his or her healthy body. *Jurek v. Jurek, supra,* 124 Ariz. at 598, 606 P.2d at 814.

We join the majority of courts in equitable distribution states in rejecting the analytic approach, and instead hold that the entire inchoate claim is marital property. As we have noted, most authorities now conclude that a cause of action for personal injury is a chose in action (a form of property), and we decline to follow *Amato's* holding to the contrary. Furthermore, we cannot hold that an injured spouse's recovery for pain and suffering would be an exchange for that spouse's separate property. Our statute defines separate property as property "acquired prior to the marriage" or "acquired during the marriage by gift, bequest, devise, or descent ... [or] in exchange therefor...." D.C.Code § 16–910(a) (1981). A spouse's healthy body, however, is not generally viewed as acquired property, and we are not inclined to say that it is. *See Platek v. Platek, supra* note 6, 309 Pa.Super. at 20–22, 454 A.2d at 1061 (construing similar statutory provision).

Another line of cases, focusing on the uncertain value of an inchoate claim, holds that the entire claim is the injured spouse's separate property. *McNevin v. McNevin,* 447 N.E.2d 611, 616 (Ind.Ct.App.1983); *Fries v. Fries,* 288 N.W.2d 77, 81 (N.D. 1980); *Hurley v. Hurley,* 342 Pa.Super. 156, 159–162, 492 A.2d 439, 441–442 (1985); *Wegner v. Wegner,* 391 N.W.2d 690, 694 (S.D.1986). The rationale for such a holding is illustrated by the following passage from *Fries:*

> There is no method by which a trial judge can place a monetary value on [an inchoate personal injury] claim without engaging in conjecture and speculation. We do not know whether or not such

claim may ever result in any monetary compensation....

*Fries, supra,* 288 N.W.2d at 81; *accord, Hurley, supra,* 342 Pa.Super. at 161–162, 492 A.2d at 442. The trial court in this case apparently found such reasoning persuasive, since it ruled that there was "simply no way to value this inchoate claim."

But courts should not be distracted by the fear of "engaging in conjecture and speculation" when distributing property rights of uncertain value in a divorce action. In *Barbour v. Barbour, supra,* we faced the issue of whether a vested but non-matured right to a pension was marital property. Such pension rights may never ripen into tangible benefits; if the working spouse dies before the pension matures, the benefits may be lost. *See Bloomer v. Bloomer,* 84 Wis.2d 124, 128–130, 267 N.W.2d 235, 238 (1978); L. GOLDEN, EQUITABLE DISTRIBUTION OF PROPERTY § 6.14 (1983). Nevertheless, we held that this right, despite its contingent nature, was indeed marital property. "[T]he fact that a particular pension is nonmatured should be a factor only with respect to valuation and apportionment of the asset, not the threshold determination as to whether the asset constitutes marital property." *Barbour, supra,* 464 A.2d at 919–920 n. 6; *see also Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981) (holding that vested, non-matured pension rights are marital property); *Weir v. Weir,* 173 N.J.Super. 130, 413 A.2d 638 (1980) (same). Other courts have ruled that non-vested pension rights are also marital (or community) property. *See, e.g., In re Brown,* 15 Cal.3d 838, 841–842, 544 P.2d 561, 562–563, 126 Cal.Rptr. 633, 634–635 (1976); *In re Hunt,* 78 Ill.App.3d 653, 658–659, 34 Ill.Dec. 55, 60, 397 N.E.2d 511, 516 (1979); *Flynn v. Flynn,* 341 Pa.Super. 76, 82–84, 491 A.2d 156, 160 (1985).

There is, of course, some difficulty in dividing a contingent property interest, whether it is a non-matured pension right or an inchoate personal injury claim. In *Barbour* we stressed that a trial court has discretion to choose any "appropriate and fair" method to accomplish this task, and in this case we conclude that the trial court on

remand will have the same measure of discretion. One such method is to calculate the present value of such an interest, taking into account the possibility that it may never materialize. This method, however, can often be uncertain, as the court recognized in *In re Brown, supra,* 15 Cal.3d at 848, 544 P.2d at 567, 126 Cal.Rptr. at 639. Other courts have opted to reserve jurisdiction over the contingent interest, enabling them to distribute any future proceeds upon receipt. Under the reserved jurisdiction approach, the court may assign each party, at the time of divorce, a fixed percentage of such future benefits. We specifically approved this technique in *Barbour, supra,* 464 A.2d at 919–920 n. 6. Alternatively, the trial court may prefer to postpone its decision on the relative shares of the parties until the benefits are in fact received. *See In re Fairchild,* 110 Ill.App. 3d 470, 474–477, 66 Ill.Dec. 131, 134–135, 442 N.E.2d 557, 560–561 (1982). It is true that, under the reserved jurisdiction procedure, the trial court may have some increased administrative duties. But the mere existence of an administrative burden does not justify the exclusion of an inchoate personal injury claim—the value of which may prove to be considerable—from the marital property pool. *In re Brown, supra,* 15 Cal.3d at 848, 544 P.2d at 567, 126 Cal.Rptr. at 639.[10]

Furthermore, there are practical reasons for rejecting the position of *Fries, McNevin,* and *Hurley.* Courts in most jurisdictions hold that all, or at least part, of a settled—not inchoate—personal injury claim is marital property; see notes 6 and 9, *supra.* Only two equitable distribution states, Oregon and Utah, seem to have a rule that the entire proceeds of a settled claim are the separate property of the injured spouse. *In re Bull,* 48 Or.App. 565,

567–568, 617 P.2d 317, 318 (1980); *In re Sellers,* 39 Or.App. 647, 649–651, 593 P.2d 1191, 1193 (1979); *Izatt v. Izatt,* 627 P.2d 49, 51 (Utah 1981). *See generally* 2 VALUATION & DISTRIBUTION OF MARITAL PROPERTY, *supra* note 8, § 23.07[1][c], at 23–104 & n. 32. If this court were to follow *Fries,* ruling that an inchoate cause of action is separate property, yet in a future case agree with the majority rule that at least some portion of a settled claim is marital property,[11] unfairness might well result. As the court explained in *In re Dettore,* 86 Ill.App.3d 540, 540–542, 42 Ill.Dec. 51, 52–53, 408 N.E.2d 429, 430–431 (1980), the injured spouse would have a great incentive to postpone settlement of the personal injury action until after the divorce. By using such tactics, the injured spouse could keep the entire proceeds of the claim as his or her separate property. Such a result would be, at best, difficult for us to accept.

Finally, we note that Maryland has recently tangled with the issue of marital rights to an inchoate personal injury claim. In *Unkle v. Unkle,* 305 Md. 587, 505 A.2d 849 (1986), the court discussed most of the principles which we have outlined here, but eventually relied on the legislative history of its controlling statute to determine whether an unliquidated, inchoate claim constituted marital property. The relevant provision defined marital property as assets "acquired" during marriage. Focusing on this term, the court held that a cause of action was not acquired, but that it "arose from purely fortuitous circumstances and not from any on-going marital initiative to acquire marital assets." *Id.* at ——, 505 A.2d at 854. Because the claim was not "acquired," the court ruled that it was the injured spouse's separate property.

---

10. Mrs. Boyce argues that since a trial court is required by section 16–910 to distribute marital property upon divorce, there can be no distribution of assets in the future. This argument must be rejected in light of *Barbour, supra,* 464 A.2d at 919–920 n. 6, which not only authorized the allocation of a fixed percentage of the husband's future pension benefits to the wife but left the door open for any "appropriate and fair" means of distribution. We see no reason to limit the trial court's power to assign Mrs.

Boyce's inchoate personal injury claim any more than we limited the court's power to assign the pension benefits in *Barbour.*

11. This is the current situation in Pennsylvania. *Platek v. Platek, supra* note 6, holds that a settled claim is entirely marital property, but *Hurley v. Hurley, supra,* holds that an inchoate claim is not.

Mrs. Boyce urges us to follow *Unkle*, but we decline to do so for at least two reasons. First of all, our statute is different. The statute involved in *Unkle* specifies that marital property consists of those assets "acquired" during marriage, which generally denotes property "gain[ed] ... by one's own exertions." BLACK'S LAW DICTIONARY 23 (5th ed. 1979). D.C.Code § 16–910(b), however, classifies any property "accumulated" during the marriage as marital property. To "accumulate" has been defined, among other things, as "to accrue; to allow to remain; to amass ... store up, aggregate, hoard." 1A C.J.S. *Accumulate*, at 140 (1985) (footnotes omitted). Although the difference between these terms may be a bit elusive, we think it clear that "accumulated" property need not be derived from one's own gainful efforts, but may be obtained fortuitously, or simply allowed to pile up.[12]

We hesitate, however, to rest our decision on such subtle distinctions. More importantly, we find *Unkle*'s reasoning unpersuasive. An injured spouse may be unable to work and may therefore lose wages. If the injuries had not occurred, the spouse would have "acquired" those wages. The portion of the award representing lost wages, therefore, constitutes funds that the couple would have "acquired" if one spouse had not been injured. *Unkle*'s characterization of any recovery as "completely fortuitous" is puzzling. Since the injured spouse in that case missed seven and a half months' work, it seems unlikely that recovery for lost wages would be fortuitous. Furthermore, the couple

may well have used marital funds to pay medical expenses, which totaled $1,824.36. Certainly, those funds had been "acquired" by the couple prior to the accident. Yet if one spouse's injuries cause the couple to deplete their marital assets for medical expenses, *Unkle* still states that any reimbursement would be "completely fortuitous." Better reasoning would conclude that such reimbursement simply replenished funds that had already been "acquired," and that at least this portion of the award would be classified as marital property. In short, we think *Unkle* is analytically dubious, and we choose not to follow it.

## IV

Mr. Boyce also contests the trial court's rulings that he is not entitled to either alimony or a share in Mrs. Boyce's retirement, that he must pay $300 per month in child support, and that he be awarded only a twenty-five percent interest in the marital home.[13] Since we reverse the trial court's ruling on Mrs. Boyce's inchoate personal injury claim, these additional contentions need not be reviewed. The proper procedure is to affirm those portions of the trial court's order which granted the divorce and awarded custody of the children (paragraphs 1 and 2 of the judgment filed October 8, 1985), since they are not contested, but to remand the rest of the order for reconsideration in light of our holding in this appeal, thereby enabling the trial court to alter other provisions if the court in its discretion elects to do so.

12. Mrs. Boyce relies on *Turner v. Taylor*, 471 A.2d 1010 (D.C.1984), for the proposition that "acquired" and "accumulated" are synonymous for the purposes of D.C.Code § 16–910. But *Turner* was not concerned with the distinction between these two terms, and thus it is of no real help in the present case.

13. Mrs. Boyce asserts that Mr. Boyce has already sold her his twenty-five percent interest in the home, and that he is therefore estopped from contesting this part of the order. It is settled in the District of Columbia that a party who has accepted benefits under a divorce decree is estopped from attacking the validity of the divorce on appeal. *Stein v. Stein*, 83 U.S. App.D.C. 286, 170 F.2d 162 (1948); *Harris v.*

*Harris*, 67 App.D.C. 85, 89 F.2d 829 (1937). Mr. Boyce, however, is not contesting the validity of the decree of divorce; his only concern at this stage is with the division of marital property. Furthermore, Mrs. Boyce has not filed a cross-appeal claiming that she is entitled to more than a seventy-five percent interest in the house. Accordingly, we hold that Mr. Boyce is not estopped from challenging, either in this appeal or on remand, the trial court's decision to award him only twenty-five percent of the house. *Tennyson v. Tennyson*, 263 A.2d 643, 644–645 (D.C. 1970); *see also In re Abild*, 243 N.W.2d 541, 543 (Iowa 1976); *Sanford v. Sanford*, 295 N.W.2d 139, 142–143 (N.D.1980). We express no view, of course, on the merits of that challenge.

*Wheeler v. Wheeler,* 88 U.S.App.D.C. 193, 196, 188 F.2d 31, 34 (1951); *see also In re Jones,* 627 P.2d 248, 251–252 (Colo.1981).

The judgment of the Superior Court is affirmed in part and reversed in part, and this case is remanded for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*