## John W. Judefind *vs.* State of Maryland.

*Finality of Decision of Circuit Court on Appeal from Justice of the Peace—Certiorari—Constitutionality of Sunday Laws.*

Where the Circuit Court has jurisdiction to hear and decide an appeal from a justice of the peace, its decision is final, and an appeal or a writ of error will not lie to the Court of Appeals unless the statute authorizes it.

If a person desires to test the constitutionality of a law under which he was arrested and tried by a justice of the peace, and to have the question properly presented to the Court of Appeals, a writ of *certiorari* should be applied for upon the specific ground of the unconstitutionality of the law, and the consequent want of power and jurisdiction of the justice of the peace to proceed under it.

The Circuit Court having authority to entertain an appeal from the judgment of a justice of the peace, on the question of juris-diction, as well as on other grounds, its decision on the question of alleged defects in the warrant of the justice of the peace charging the offence, and in the bond for the appearance of the traverser in the Circuit Court, cannot be reviewed on writ of error to the Court of Appeals.

Section 247 of Article 27 of the Code of Public General Laws, prohibiting work on Sunday, is not in violation of the Constitution of the United States, or of the Constitution of this State.

APPEAL AS UPON WRIT OF ERROR, from the Circuit Court for Kent Court.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, McSHERRY, and BOYD, J., for the appel-

NOTE. The constitutionality of Sunday laws is the subject of a note to the above case in 22 *L. R. A.*, 721.

lant.   The Court declined to hear counsel for the appellee.

*James T. Ringgold*, for the appellant.

*John Prentiss Poe, Attorney-General*, for the appellee.

BOYD, J., delivered the opinion of the Court.

The plaintiff in error was arrested, under a warrant issued by a justice of the peace for Kent County, for husking corn on Sunday.   He was tried, convicted, and fined five dollars and costs, in accordance with the provisions of Article 27, section 247, of the Code of Public General Laws.   He appealed to the Circuit Court, where he elected to be tried before the Court, and was convicted and fined five dollars and costs by that Court.   He has brought the case to this Court by petition in the nature of a writ of error, in which he designates the following as the points of law to be reviewed:

(1) That section 247 of Article 27 of the Code is void because it is in violation of the first paragraph of the fourteenth Article of the Constitution of the United States.

(2) That said statute is void because it is in violation of Article thirty-six of the Bill of Rights of the Constitution of Maryland.

(3) That the Circuit Court for Kent County had no jurisdiction to try and convict the traverser, since the justice of the peace had no jurisdiction.

First.   Because (*a*) the warrant charged no offence under the statute, as it failed to set forth that the husking of corn on Sunday was not a work of necessity or charity.   (*b*) The warrant shows upon its face that it was issued on Sunday, and its mandate is to apprehend the traverser "immediately."   It is admitted that it was actually served on Sunday; for these reasons it is void, and

no jurisdiction could be acquired under it. Second. That the bond for appearance of the traverser in the Circuit Court is void because it held him to answer a charge of "Sabbath-Breaking," and no such offence is known to the laws of this State; and it is also in fatal variance with the warrant, which says nothing of Sabbath-breaking by the traverser, but charges him with husking corn on Sunday.

The Attorney-General, on behalf of the State, moved to quash the writ of error on the ground that no writ of error lies to this Court from the decision of the Circuit Court, on an appeal to it from the judgment of a justice of the peace. That motion must prevail. It is well settled in this State that when the Circuit Court has jurisdiction to hear and decide an appeal from a justice of the peace its decision is final, and an appeal or writ of error to this Court will not lie—unless of course the statute authorizes such appeal or writ of error to this Court. If the traverser desired to contest the constitutionality of the law under which he was arrested, and have that question properly presented for the consideration of this Court, he could have applied for the writ of *certiorari* upon the specific ground of the unconstitutionality of the law, and the consequent want of power and jurisdiction of the justice of the peace to proceed under it. This Court could then have reviewed the judgment of the Circuit Court on an appeal or writ of error. Nor can we review the decision of the Circuit Court on the question of the alleged defects on the face of the warrant and bond.

That Court had the power and authority to entertain the appeal from the judgment of the justice on the question of jurisdiction, as well as on other grounds, and, the plaintiff in error having invoked and submitted himself to its jurisdiction, its judgment is final and conclusive. The case of *Rayner vs. State,* 52 *Md.,* 368, is

directly in point, and it is unnecessary to refer to the other decisions of this Court. The attorney for the plaintiff in error argued at considerable length the constitutionality of the Sunday law involved in this case, and urgently requested this Court to pass upon that question, regardless of our views on the motion to quash the writ of error. Having determined that the case is not properly before us, we do not feel called upon to discuss at length the cases cited or reasons assigned by the learned counsel, but as a refusal to state our conclusions might be deemed by some an indication of doubt on our part, we will briefly state our views on the subject.

We have not the slightest hesitation in announcing that the law complained of is not in conflict with the Constitution of the United States or of Maryland. Although the argument of the attorney for the plaintiff in error gave evidence of thorough research and great labor, as well as ingenuity and ability, he was compelled to admit that if we were to be governed by precedent, he had no standing in Court, as the cases were opposed to his contention. There have been numerous decisions in this country, as well as elsewhere, sustaining such laws, and we have no desire to be the exception to the general rule.

Nature, experience, and observation suggest the propriety and necessity of one day of rest, and the day generally adopted is Sunday.

There are, and always will be, honest differences of opinion as to how Sunday should be spent, but the advantages of having a weekly day of rest, "from a mere physical and political standpoint," are too apparent to permit us to doubt the propriety of having reasonable laws to regulate work on that day.

In interpreting them, Courts must not place unreasonable constructions upon them. There may be some circumstances under which it would be deemed harsh and

severe to punish a man for husking corn on Sunday; but if he defies the laws of the State, or makes himself obnoxious to those desiring the quiet and peace of this day of rest, he should expect the machinery of the law to be put in motion. If the position taken by the plaintiff in error in reference to the law in question is correct, then the law prohibiting the sale of liquor, &c., on Sunday is unconstitutional, as would be most, if not all, of our laws concerning Sunday. If the Legislature cannot prohibit work, &c., on Sunday, as forbidden by section 247, of Article 27, of the Code, why should it be permitted to prohibit the sale of liquor, goods, wares or merchandise, or prohibit dancing saloons, opera houses, barber shops, &c., from being kept open on that day?

The laws and Courts of this State have recognized Sunday as a day of rest from the time the State was formed, and statutes on the subject that were in force in Colonial days are still in our Code. This Court has, from time to time, given expression to its views on the question in very clear and unequivocal terms. In *Kilgour vs. Miles, et al.*, 6 *Gill & J.*, 274, Judge CHAMBERS, in delivering the opinion of the Court, said: "The Sabbath is emphatically *the day* of rest, and the day of rest here is the 'Lord's day,' or Christian's Sunday. Ours is a Christian community, and a day set apart as the day of rest is the day consecrated by the resurrection of our Saviour, and embraces the twenty-four hours next ensuing the midnight of Saturday."

In *State vs. Fearson*, 2 *Md.*, 313, Judge MASON in passing upon the charge of permitting persons to bet on cards on Sunday, contrary to the statute then in force, sustained the law, and added that, "independent of any statutory prohibition, this is a gross offence against decency and public morals, and therefore richly merits punishment." In *Phil., Wilm. & Balto. Railroad Co.*

*vs. Lehman,* 56 *Md.* 227, Judge ALVEY, in speaking of Sunday laws in the different States, said: "They are substantially the same in their general scope and provision:—all looking to keeping the day sacred, and as one of rest from secular employments;" and in other cases our Sunday laws have been enforced.

Some of the statutes in force in this State were passed as early as 1723—the one complained of in this case bearing that date originally, and being continued in the Code of 1888. The tendency of legislation in this country is to provide for further rest, rather than to take away "the day of rest," that is welcomed by the industrious and hard working people of our land. As late as 1892, the Legislature of Maryland passed a law authorizing banks in the City of Baltimore to close their doors for business at twelve o'clock noon, on every Saturday in the year, and provided for the payment of notes, &c., falling due on Saturday, "on the next succeeding secular or business day."

Article thirty-six of our Declaration of Rights guarantees religious liberty; but the members of the distinguished body that adopted that Constitution never supposed they were giving a death blow to Sunday laws by inserting that Article. Those laws do not prohibit or interfere with the worship of God on any day other than Sunday, nor do they compel any one to worship Him on Sunday.

It is undoubtedly true that rest from secular employment on Sunday does have a tendency to foster and encourage the Christian religion—of all sects and denominations that observe that day—as rest from work and ordinary occupation enables many to engage in public worship who probably would not otherwise do so. But it would scarcely be asked of a Court, in what professes to be a Christian land, to declare a law unconstitutional because it requires rest from bodily labor on Sunday,

(except works of necessity and charity,) and *thereby* promotes the cause of Christianity. If the Christian religion is, incidentally or otherwise, benefited or fostered, by having this day of rest, as it undoubtedly is, there is all the more reason for the enforcement of laws that help to preserve it. Whilst Courts have generally sustained Sunday laws as "civil regulations," their decisions will have no less weight if they are shown to be in accordance with divine law as well as human.

There are many most excellent citizens of this State who worship God on a day other than Sunday, and our Constitution guarantees to them the right to do so, a right which no one can interfere with.

The Legislature of this State has not undertaken to prohibit work on the day observed by them, and hence they do not have, in their religious work, the advantage of having their Sabbath made a "day of rest" by human law; but the Legislature has not in any way interfered with their religious liberty, or with their worship of God in such manner as they think most acceptable to Him, as they have a right to do under the above provision in the Declaration of Rights.

If, then, the question was properly before us, we would decide that section 247 of Article 27 of the Code, was not in violation of the Constitution of the United States or of the Constitution of this State, but, as stated above, we must quash the writ of error for the reasons given.

*Writ of error quashed,*
*with costs.*

(Decided 23rd January, 1894.)