670 A.2d 472

**Luvenilde Margott BLAKE**

v.

**Clifton Avon BLAKE.**

**No. 14, Sept. Term, 1995.**

Court of Appeals of Maryland.

Jan. 25, 1996.

Chasanow, J., filed concurring opinion in which Bell, J., joined.

**328**

Jeffrey J. Utermohle, Baltimore (Dennis E. Cuomo, on brief), Towson, for Appellant.

Robert L. Bloom, Baltimore, for Appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

We granted certiorari on our own motion and prior to consideration of this case by the Court of Special Appeals in order to decide whether personal injury settlement proceeds, acquired during marriage, constitute marital property. The appellee has moved to dismiss the appeal on the ground that the notice of appeal was not timely filed. For the reasons explained below we grant the appellee's motion, and, consequently, we do not reach the merits.

Clifton Avon Blake and Luvenilde Margott Blake were married on November 8, 1976. They separated in January 1987. In late 1990 Mr. Blake filed a complaint for limited divorce, for sole custody of the two minor children of the marriage, and for an order charging both Mr. and Mrs. Blake with the support of the children.

Mrs. Blake answered and filed a counterclaim seeking an absolute divorce, sole custody of the children, both *pendente lite* and permanent child support and alimony, and counsel fees.

Based on the report of a master, the circuit court in September 1991 ordered Mr. Blake to pay, *pendente lite,* $200 per month in alimony and $350 per month in child support, as well as the monthly payments on the mortgage secured by the residential property occupied by Mrs. Blake and the children.

About one and one-quarter years later, while the two complaints for divorce remained pending, Mrs. Blake petitioned the court to find Mr. Blake in contempt for failure to pay alimony and child support. She averred that as of January 8, 1993 the arrearages were $4,950.

By an amended counterclaim filed February 5, 1993, Mrs. Blake renewed the claims asserted in her original counterclaim and added additional claims, including a claim for an equitable award of marital property.

The remaining relevant procedural steps in the litigation are hereinafter set forth in three columns. The column headed "Date" sets forth the effective date of a procedural step. The column headed "Divorce" refers to procedural steps leading to adjudication of the issues raised by the complaint and amended counterclaim in the divorce action. The column headed "Contempt" relates to the procedural steps involved in resolving the petition for contempt to enforce the order awarding alimony and child support *pendente lite*.

| Date | Divorce | Contempt |
| --- | --- | --- |
| 2/10/93 | | Mr. Blake answers the petition for contempt and, *inter alia*, seeks a credit against the claimed arrearage for $3,000 allegedly given to Mrs. Blake for a trip to her native Chile. |
| 5/17 & 5/18/93 | Trial before circuit court. | |
| 6/28/93 | | Master's report recommends that the contempt petition be dismissed if Mr. Blake resumes the previously ordered monthly payments and if, within 45 days of the court order adopting the master's recommendations, Mr. Blake pays $4,776.50 of arrearages. |

| Date | Divorce | Contempt |
|------|---------|----------|
| 7/9/93 | | Mr. Blake files exceptions to the report challenging the failure to give him credit for $3,000. |
| 7/30/93 | Circuit court judge files opinion announcing decision on all claims asserted in both complaints, except Mrs. Blake's claim for counsel fees, on which the opinion is silent. Court directs counsel for Mr. Blake to prepare order. | |
| 8/9/93 | Order, drafted in accordance with opinion and signed by judge on August 4, 1993 is docketed. Entry reads: "Judgment granting the parties an absolute divorce, etc, fd." | |
| 8/25/93 | | Order of court dated 8/20/93 is docketed, dismissing Mr. Blake's exceptions to the master's report for lack of timeliness. |
| 8/27/93 | Mrs. Blake's motion to revise the judgment is filed. The motion argues, *inter alia,* that Mrs. Blake's claim for a share of the funds remaining from the settlement of Mr. Blake's personal injury claim should not have been denied and that Mrs. Blake should be awarded attorney's fees. | |
| 10/7/93 | | "*Pendente lite* order *nunc pro tunc,*" dated October 1, 1993 is docketed. It directs the payment of *pendente lite* alimony |

| Date | Divorce | Contempt |
|------|---------|----------|
| | | and child support, in the previously ordered amounts, dating from June 28, 1993. The order also provides that the arrearages of $4,776.50 be paid within 45 days "of this Order." |
| 2/14/94 | Clerk enters a "court minute" on file jacket and makes docket entry recording that Mrs. Blake's motion to revise Judgment has been denied. | |
| 4/12/94 | Notice is sent by clerk advising parties that the motion to revise judgment had been denied. | |
| 5/11/94 | Mrs. Blake's notice of appeal is filed. | |

■ In his motion to dismiss Mr. Blake points out that Mrs. Blake's motion to revise the judgment was filed more than ten days after the judgment was entered on August 9. *See* Maryland Rule 2–601(b). Accordingly, the motion must be treated as a thirty day motion to revise filed pursuant to Maryland Rule 2–535. A motion filed under that rule more than ten days after the entry of judgment does not stop the running of the thirty day appeal period. *See* Md.Rule 8–202(c); *Falcinelli v. Cardascia,* 339 Md. 414, 421–22, 430–31, 663 A.2d 1256, 1259–60, 1263–64 (1995); *Alitalia Linee Aeree Italiane v. Tornillo,* 320 Md. 192, 200, 577 A.2d 34, 38 (1990).

■ At oral argument Mrs. Blake suggested that the judgment in the divorce action did not become final until Mr. Blake's exceptions to the master's report were dismissed on August 25, 1993, so that the motion to revise, when filed on August 27, was a ten day motion, the disposition of which would trigger the running of a new thirty day appeal period. We disagree. The claim by Mrs. Blake for *pendente lite*

alimony and support had been determined by the September 1991 order. The exceptions dismissed on August 25, 1993 related to the attempted enforcement by contempt of that *pendente lite* order. The fact that exceptions to the master's report in the contempt proceeding were pending and undecided on August 9, 1993 when the judgment in the divorce action was docketed did not prevent that judgment from being final on that date.

> "A contempt proceeding, even though it may grow out of or be associated with another proceeding, is ordinarily regarded as a collateral or separate action from the underlying case and as separately appealable, with appellate review normally limited to the contempt order itself. Because the underlying proceeding and the contempt proceeding are usually regarded as separate actions, and not simply as separate issues or claims in the same action, it follows that a judgment terminating the underlying action is final and appealable despite the fact that the associated contempt proceeding is still pending in the trial court."

*Unnamed Attorney v. Attorney Grievance Comm'n,* 303 Md. 473, 483–84, 494 A.2d 940, 945 (1985) (citations omitted).

■ The judgment of August 9, 1993, however, was silent with respect to the claim for counsel fees asserted by Mrs. Blake in her original and in her amended counterclaims. The circuit court had the discretionary power to award counsel fees pursuant to Maryland Code (1984, 1991 Repl.Vol., 1995 Cum.Supp.), §§ 11–110 and 12–103 of the Family Law Article (FL).[1] The question that then arises is whether the absence

---

1. Family Law Article § 11–110 provides:

 "(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

 (2) 'Proceeding' includes a proceeding for:

 (i) alimony;

 (ii) alimony pendente lite;

 (iii) modification of an award of alimony;

 and

 (iv) enforcement of an award of alimony.

 (3) 'Reasonable and necessary expense' includes:

 (i) suit money;

of any determination of the claim for counsel fees deprives the August 9 judgment of finality. Although this is an issue on which we have not previously directly passed, we have consid-

---

(ii) counsel fees; and

(iii) costs.

(b) *Authority of court.*—At any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.

(c) *Required considerations.*—Before ordering the payment, the court shall consider:

(1) the financial resources and financial needs of both parties; and

(2) whether there was substantial justification for prosecuting or defending the proceeding.

(d) *Absence of substantial justification.*—Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party the reasonable and necessary expense of prosecuting or defending the proceeding.

(e) *Expenses paid previously.*—The court may award reimbursement for any reasonable and necessary expense that has previously been paid.

(f) *Counsel fees.*—As to any amount awarded for counsel fees, the court may:

(1) order that the amount awarded be paid directly to the lawyer; and

(2) enter judgment in favor of the lawyer."

Section 12–103 provides:

"(a) *In general.*—The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or

(2) files any form of proceeding:

(i) to recover arrearages of child support;

(ii) to enforce a decree of child support; or

(iii) to enforce a decree of custody or visitation.

(b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

(c) *Absence of substantial justification.*—Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees."

ered the relationship between counsel fees and judgment finality in other contexts.

*Pappas v. Pappas,* 287 Md. 455, 413 A.2d 549 (1980), made plain that family law actions are embraced by the requirement for finality in multiple claims cases, now Md.Rule 2–602, whereby all of the claims as to all of the parties must be adjudicated, absent certification. We held in *Pappas* that

"it is not necessary for us to determine whether the reservation of the amount of counsel fees or the reservation of the amount of alimony and support without more would render the decree other than final. It is sufficient for our purposes to hold that where the issue of property division, the amount of counsel fees, *and* the amount of alimony and support remain to be determined, the judgment was not final."

*Id.* at 463, 413 A.2d at 553.

A claim for attorney's fees, awardable pursuant to 42 U.S.C. § 1988, was presented in *County Executive of Prince George's County v. Doe,* 300 Md. 445, 479 A.2d 352 (1984) (*Doe II* ). The claim for attorney's fees was not asserted until after this Court had affirmed the grant of relief on the plaintiff's claim in *County Executive of Prince George's County v. Doe,* 291 Md. 676, 436 A.2d 459 (1981) (*Doe I*). We explained in *Doe II* that

"under 42 U.S.C. § 1988, a claim for an attorney's fee, while an integral part of the remedy under 42 U.S.C. § 1983, is viewed as a collateral matter from the § 1983 action; thus the claim for an attorney's fee may be brought following a final judgment in a § 1983 action."

300 Md. at 451 n. 4, 479 A.2d at 355 n. 4.

We again considered counsel fees under 42 U.S.C. § 1988 in *Maryland Nat'l Capital Park & Planning Comm'n v. Crawford,* 307 Md. 1, 511 A.2d 1079 (1986), where, in an action founded on 42 U.S.C. § 1983, a circuit court had awarded the successful plaintiff attorney's fees for work in connection with an appeal to the Court of Special Appeals. In *Crawford* we quoted from *Doe II* the passage above set forth. 307 Md. at 38–39, 511 A.2d at 1098. After reviewing the

cases we concluded that "they generally take the position that trial courts may award fees despite the fact that an appeal has been taken from the judgment on the merits and is pending." *Id.* at 40, 511 A.2d at 1099.

The Magnuson–Moss Warranty Federal Trade Commission Improvement Act provides for awarding attorney's fees. 15 U.S.C. § 2310(d)(2). In *Larche v. Car Wholesalers, Inc.*, 80 Md.App. 322, 562 A.2d 1305 (1989), a plaintiff had obtained judgment on a jury verdict on claims including one under the Magnuson–Moss Act. When the plaintiff appealed from a judgment in favor of the defendant on the plaintiff's claim for punitive damages, the defendant moved to dismiss the appeal as premature because the claim for counsel fees under the federal statute had not been adjudicated by the trial court. *Id.* at 325, 562 A.2d at 1307. Citing *Doe* and *Crawford,* the Court of Special Appeals held that the judgment was nevertheless final, by analogy to a claim for counsel fees in a § 1983 action. *Larche,* 80 Md.App. at 326–28, 562 A.2d at 1307–08.

With respect to an award of counsel fees imposed as a sanction under Md.Rule 1–341, this Court has held that the award is not appealable, prior to final judgment on the merits, either as an order to pay money, *Simmons v. Perkins,* 302 Md. 232, 486 A.2d 1192 (1985), or under the collateral order doctrine, *Yamaner v. Orkin,* 310 Md. 321, 529 A.2d 361 (1987). After final judgment on the merits we have reviewed Rule 1–341 sanctions imposed in the course of the proceedings, *Yamaner v. Orkin,* 313 Md. 508, 545 A.2d 1345 (1988), and we have reviewed Rule 1–341 sanctions imposed after judgment on the merits was entered, *Newman v. Reilly,* 314 Md. 364, 550 A.2d 959 (1988).

The Court of Special Appeals has considered the relationship between Rule 1–341 sanctions and finality in a procedural framework which is substantially the framework presented here. *Johnson v. Wright,* 92 Md.App. 179, 607 A.2d 103 (1992). *Johnson* was a multiple parties and claims action. *Id.* at 180, 607 A.2d at 103–04. The trial court, by dismissing a

counterclaim on July 12, 1991, adjudicated the last, unresolved claim on the merits. *Id.* at 181, 607 A.2d at 104. At that time a claim for Rule 1–341 counsel fees was pending, which the court denied on July 16, 1991. *Id.* Plaintiffs, aggrieved by the rulings on the merits, noted their appeal August 14, 1991 and, thus, more than thirty days after the dismissal of the counterclaim but less than thirty days after adjudication of the motion for fees. *Id.* The Court of Special Appeals dismissed the appeal on the authority of *Larche* and *Crawford.* *Johnson*, 92 Md.App. at 181–82, 607 A.2d at 104–05. "The pendency of the collateral motion for attorneys' fees did not stay or enlarge the time for taking an appeal from the judgment." *Id.* at 182, 607 A.2d at 105.

The precise issue before us is whether a claim for counsel fees under FL §§ 11–110 and 12–103 should be treated as part of the claim for relief on the merits, so that the August 9, 1993 judgment in the Blakes' divorce action was not then final, or whether, by analogy to the fee shifting provisions of the federal Civil Rights Acts, the Magnuson–Moss Act, and Rule 1–341, the fees requested by Mrs. Blake are considered to be collateral, despite the remedial aspects of the authorizing statutes. A guidepost to resolving this issue is found in dicta in *Newman*, 314 Md. 364, 550 A.2d 959. That was a medical malpractice action in which the physician unsuccessfully argued that the chairperson of a Health Claims Arbitration panel, acting alone, had authority to impose a Rule 1–341 sanction. *Id.* at 378–79, 550 A.2d at 966–67. In answer to a contention that, absent such power, the institution of a circuit court action following a panel decision on the merits would oust the panel of jurisdiction to consider a pending sanctions motion, we said:

> "If this problem is governed by analogy to actions in courts, we simply observe that, under the majority rule, an appeal from a trial court judgment on the merits does not deprive the judgment-rendering court of jurisdiction to consider an award of counsel fees."

*Newman*, 314 Md. at 379–80 n. 12, 550 A.2d at 967 n. 12 (citations omitted).

Our lead citation in *Newman* for the above-quoted proposition was *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). In *Budinich* the Court affirmed the dismissal by a United States Court of Appeals of an appeal from a judgment on the merits in an action for employment compensation that had been removed from a Colorado state court to the United States District Court for the District of Colorado, based on diversity of citizenship. *Id.* at 197, 203, 108 S.Ct. at 1719, 1722. A Colorado statute provided for counsel fees in employment compensation cases. *Id.* at 197, 108 S.Ct. at 1719. Budinich had obtained a jury verdict, the amount of which was unsatisfactory. *Id.* Budinich's new trial motions were denied, and approximately three months thereafter the district court awarded attorney's fees. *Id.* at 197–98, 108 S.Ct. at 1719. Budinich then appealed. *Id.* at 198, 108 S.Ct. at 1719. The Supreme Court held that there had been a "final decision" under 28 U.S.C. § 1291 when the merits had been resolved by denial of the new trial motions. *Id.* at 202–03, 108 S.Ct. at 1722.

In a unanimous opinion, the Court applied the rationale set forth below:

"[The] practical approach to the matter suggests that what is of importance here is not preservation of conceptual consistency in the status of a particular fee authorization as 'merits' or 'nonmerits,' but rather preservation of operational consistency and predictability in the overall application of § 1291. This requires, we think, a uniform rule that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final.

"For all practical purposes an appeal of merits-without-attorney's-fees when there is a statute deeming the attorney's fees to be part of the merits is no more harmful to the trial process than an appeal of merits-without-attorney's-fees when there is no such statute. That 'deeming' does not render the appeal more disruptive of ongoing proceedings, more likely to eliminate a trial judge's opportunity for

reconsideration, more susceptible to being mooted by settlement, or in any way (except nominally) a more piecemeal enterprise. ·In short, no interest pertinent to § 1291 is served by according different treatment to attorney's fees deemed part of the merits recovery; and a significant interest is disserved. The time of appealability, having jurisdictional consequences, should above all be clear. We are not inclined to adopt a disposition that requires the merits or nonmerits status of each attorney's fee provision to be clearly established before the time to appeal can be clearly known. Courts and litigants are best served by the bright-line rule, which accords with traditional understanding, that a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case."

*Id.*

This rationale is sound, and we apply it here.

█ The notice of appeal, however, is timely to bring before us the denial of the thirty day (Md.Rule 2–535) motion. But the circuit court did not abuse its discretion by refusing to revise its judgment denying Mrs. Blake's claim to a share of the remainder of the personal injury settlement proceeds. *Falcinelli,* 339 Md. at 430–31, 663 A.2d at 1264.

*APPEAL FROM JUDGMENT OF AUGUST 9, 1993 DISMISSED.· APPEAL FROM THE DENIAL OF THE·MOTION TO REVISE AFFIRMED. COSTS TO BE PAID BY THE APPELLANT, LUVENILDE MARGOTT BLAKE.*

Concurring opinion by CHASANOW, J. in which BELL, J. joins.

CHASANOW, Judge.

I concur in the result which affirms the trial judge, but disagree with the way the Court reaches that result. This Court granted certiorari on its own motion prior to consider-· ation of this case by the Court of Special Appeals because of

the importance of the single issue raised in the brief of appellant, Luvenilde Blake (Ms. Blake). That issue is:

"Whether the trial court erred in finding that the husband's personal injury settlement proceeds obtained during the parties' marriage did not constitute marital property?"

Instead of deciding the case on the issue briefed and argued by the parties, the Court uses this appeal to *sua sponte* raise and then reject a contention not previously decided by this Court. Neither party suggested to this Court that there was an unresolved counsel fee issue nor was there any suggestion that the counsel fee claim might arguably prevent the judgment from being final. The argument that an unresolved counsel fee claim might prevent a judgment from being final was raised by, and rejected by, the Court *sua sponte* without benefit of briefs and arguments.

## I. MOTION TO DISMISS

Appellee, Clifton Blake (Mr. Blake), filed an appellee's brief dealing with the issue raised by Ms. Blake, as well as a terse, conclusory motion to dismiss. The entire text of Mr. Blake's motion to dismiss is as follows:

"The appellee, in accordance with Rule 8–603 of the Maryland Rules of Procedure, moves this honorable court to dismiss the appeal filed herein as improvidently granted, and in support thereof, says:

1. The appeal was untimely filed, and should be dismissed.

The *JUDGMENT OF DIVORCE* in this matter was entered on August 4, 1993. The ruling on the *MOTION FOR RECONSIDERATION* was entered on February 14, 1994, and the appeal was not noted until May 11, 1994. (E14–E15).

**Rule 8–202. NOTICE OF APPEAL–TIMES FOR FILING** states '(a) Generally.—Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken.' Even if the *MOTION FOR*

*RECONSIDERATION* filed by the appellant is considered to be a motion under Rule 2–534, the notice of appeal still was not filed within 30 days as required by the Rule.

2. The appeal is from an opinion of the trial court and not from the judgment and should be dismissed.

The appellant in the *STATEMENT OF THE CASE* on page 3 of her brief indicates that she is appealing from the opinion of the court in ruling that the personal injury settlement proceeds were not marital property rather than appealing from the *JUDGMENT OF DIVORCE.*

It has been decided by this court on more than one occasion that 'appeal from the opinion of the trial court and not from the judgment cannot be allowed, since the opinion is no part of the judgment.' *Fast Bearing Co. v. Precision Dev. Co.,* 185 Md. 288, 44 A.2d 735 (1945)."

Neither of the two grounds for dismissal stated in the motion justify dismissing the appeal, and the appeal cannot be dismissed "as improvidently granted." Mr. Blake first contends that the appeal was untimely because it was noted on May 11, 1994, which was more than 30 days beyond the February 14, 1994 date that the trial judge denied the motion to revise the judgment. Mr. Blake fails to mention that the notice of the judge's ruling was not mailed by the Clerk of the Court until April 12, 1994. It was from that latter date, when the parties were made aware of the judge's ruling, that the 30 days for filing the appeal began to run. Hence, the appeal of the decision on the motion to revise was not untimely.

The second basis for appellee's motion to dismiss is that Ms. Blake is "appealing from the opinion of the court in ruling that the personal injury settlement proceeds were not marital property rather than appealing from the *JUDGMENT OF DIVORCE.*" This apparently refers to the appeal from the decision denying the 30–day motion to revise. But, as the majority opinion acknowledges, that appeal was timely and should not be dismissed. The fact that there are only limited bases to review a trial judge's rulings on a motion to revise does not mean that an appeal of the ruling should not be

permitted. There is a big difference between contending that there is no *right* to appeal and contending that there is no *merit* in an appeal. The only two grounds stated in appellee's motion to dismiss do not justify dismissing this appeal.

Even though the only two grounds set forth in Mr. Blake's motion to dismiss do not seem to justify dismissal, the majority undertakes its own search for other reasons to dismiss at least part of this appeal. Putting aside the substantive issue briefed and argued by the parties, the Court scrutinizes the docket entries, the pleadings, and the decisions of the trial judge. *Sua sponte,* the majority undertakes an analysis of the law concerning final judgments, the difference between a 10–day motion under Rules 2–532 through 2–534 and a 30–day motion under Rule 2–535, the nature of a claim for attorney's fees in a divorce action, and the limited review of a motion to revise a judgment. A considerable portion of that analysis was not necessitated by anything filed by the parties to this appeal. Neither party in brief or argument mentioned that the trial judge failed to decide the claim for counsel fees and neither party suggested that the failure to decide a claim for counsel fees was at all relevant to the finality of any judgment. Merely because an appellee files a terse, conclusory, and groundless motion to dismiss should not require or even justify this Court scrutinizing the entire record in order to uncover, discuss, and then reject contentions not raised by the parties.

I believe we should have decided the case on the issue briefed and argued by the parties. The instant case is one of those rare cases where we should exercise our discretion to review the law relied on by a trial judge in deciding to deny a motion to revise a judgment. Even if the Court was going to dismiss the appeal, we still could have, and should have discussed the substantive issue raised by the parties. That substantive issue was of such importance that this Court granted certiorari on its own motion prior to the consideration of the issue by the Court of Special Appeals.

This Court has also stated that *ordinarily* it will not review a trial judge's Rule 2–535 decision not to reopen a legal issue raised at trial. In *Hardy v. Metts,* 282 Md. 1, 381 A.2d 683 (1978), this Court stated:

> "[W]hen the trial court denies a Rule [2–535] preenrollment request to revise a final judgment rendered on the merits, if that judgment was based solely on a question of law an appellate court will not *ordinarily* disturb the trial court's discretionary decision not to reopen the matter; an appeal from the primary judgment itself is the proper method for testing in an appellate court the correctness of such a legal ruling." (Emphasis added).

282 Md. at 6, 381 A.2d at 686. This case, however, is not an *ordinary* case. The substantive issue raised in the instant case is an important issue, and rather than resolve the case on an issue not briefed or argued by the parties, we should exercise our discretion to decide the issue that was briefed and argued by the parties.

Even where this Court has dismissed an appeal, we have on occasion, where the issue was of sufficient importance, nevertheless set forth our views on the issue. As Judge Eldridge once wrote:

> "[I]f the issue on the merits is deemed to be sufficiently important, we could set forth our views even while directing that the appeal be dismissed. Although the portion of the opinion setting forth such views would not technically constitute the holding in the case, it would advise trial judges, lawyers, and others as to the law and would likely accomplish the same purpose as a holding. This course of action has occasionally been taken by this Court in the past. For example, in *Judefind v. State, supra,* 78 Md. 510, 28 A. 405 [ (1894) ], the issue on the merits concerned the constitutionality of the laws prohibiting certain work on Sundays. While required to dismiss the appeal because of the lack of appellate jurisdiction in this Court, our predecessors went on to express the opinion that the statutes were constitutional, 78 Md. at 513–516, 28 A. at 406–407. *See also, e.g.,*

*Roth and Boyle v. House of Refuge,* 31 Md. 329, 334–335 (1869)."

*Cardinell v. State,* 335 Md. 381, 426–27, 644 A.2d 11, 33 (1994) (Eldridge, J., dissenting). See also *Thanos v. State,* 332 Md. 511, 632 A.2d 768 (1993), where we stated:

"Although ordinarily we do not express our views on questions raised by a dismissed appeal, on occasion we do so to resolve a matter of substantial importance. *Montgomery County v. McNeece,* 311 Md. 194, 200, 533 A.2d 671[, 674] (1987)."

332 Md. at 521, 632 A.2d at 772.

After being critical of the Court for not reaching the substantive issue upon which we granted certiorari, and in order to explain why I concur in this Court's judgment affirming the trial judge, I feel compelled to explain my reasons for agreeing with the rulings made by the trial judge.

## II. PERSONAL INJURY PROCEEDS ARE PART MARITAL PROPERTY

On February 9, 1984, Mr. Blake was injured while working as a seaman on board the S.S. Santa Elena in Ecuador. As a result of the accident, his left leg was amputated below the knee. Mr. Blake now receives accidental disability benefits from the Seafarers' International Union.

Mr. Blake also sued Delta Steamship Lines, Inc. and Crowley Maritime Corporation alleging damages for personal injury, wage loss, loss of consortium, and compensation for present and future economic loss. The case settled on November 4, 1985 for one million dollars in return for releases signed by both Clifton and Luvenilde Blake. Mr. Blake's release was signed in consideration for the one million dollar settlement, while Ms. Blake released the steamship company from liability "for consideration of One Dollar and No Cents ($1.00) and other good and valuable consideration (including a settlement made by Delta Steamship Lines, Inc. with my husband, Clifton Blake for injuries sustained by him ...)." Clifton Blake received $637,483.09 of the one million dollar settlement after attorney fees and court costs. Of that sum, approximately

$115,000.00 remained in Mr. Blake's possession at the time of the divorce.

At the divorce hearing, the trial judge considered, *inter alia*, whether any portion of Mr. Blake's settlement proceeds from his injury constituted marital property and if so, whether a monetary award should be entered based on those proceeds. Judgment for absolute divorce was granted to the parties on August 9, 1993. The trial judge ordered alimony and a monetary award to Ms. Blake based on Mr. Blake's disability pension benefits. Judge Hennegan stated, however, that he was

"unable to determine what, if any, of the [personal injury] proceeds represented [marital property]. It is the obligation of the party asserting a marital property interest in specific property to produce evidence as to the identity and value of that property. As a result, this court finds that the settlement proceeds flowed from a personal injury sustained by Clifton Blake and, therefore, [are] not a marital asset."

Ms. Blake moved to revise the judgment of August 9 regarding, *inter alia*, the court's refusal to consider the personal injury proceeds as marital property. The trial judge denied the motion to revise. Ms. Blake then filed her notice of appeal. The issue Ms. Blake presented on appeal was whether personal injury settlement proceeds, acquired during the marriage, constitute marital property pursuant to Maryland Code (1984, 1991 Repl.Vol., 1995 Supp.), Family Law Article (FL), § 8–201(e).

The trial judge properly concluded that the remaining portion of Mr. Blake's settlement proceeds was not marital property. I reach this conclusion because Ms. Blake failed to prove what, if any, portion of the personal injury settlement proceeds at issue constituted marital property. A substantial portion of Mr. Blake's settlement compensated him for the loss of his leg, pain and suffering incident thereto, and loss of wages for the period after the divorce. That portion was properly considered his separate property. If Ms. Blake had proven that a portion of the personal injury proceeds compen-

sated for loss to the marital entity, the trial judge could have found that portion of the proceeds to be marital property. Ms. Blake, however, failed to meet that burden of proof. *See Odunukwe v. Odunukwe,* 98 Md.App. 273, 282, 633 A.2d 418, 422 (1993) (party asserting a marital interest in specific property bears the burden of proving that the property is "marital"); *Noffsinger v. Noffsinger,* 95 Md.App. 265, 281, 620 A.2d 415, 422 (party asserting marital property interest must produce evidence as to its identity and value), *cert. denied,* 331 Md. 197, 627 A.2d 539 (1993).

In holding that Ms. Blake failed to prove what, if any, portion of the personal injury proceeds was marital property, the trial judge found our opinion in *Unkle v. Unkle,* 305 Md. 587, 505 A.2d 849 (1986), to be dispositive. In *Unkle,* we held that an unliquidated personal injury claim was not marital property within the definition intended by the legislature under FL § 8–201(e). Commenting on the nature of the inchoate claim, we noted that it was "uniquely personal to the holder" and that, "while it may have some attributes of personal property, the claim was not . . . 'acquired' during the marriage by one or both spouses. It arose from purely fortuitous circumstances and not from any on-going marital initiative to acquire marital assets." *Unkle,* 305 Md. at 596, 505 A.2d at 854. But we also recognized that *"in part . . .* payment of the claim would produce monies which would replenish marital assets previously diminished through payment of medical expenses and the loss of wages." *Id.* (emphasis added).

At the time of the husband's accident in *Unkle,* the couple was separated. The husband had not filed suit on his personal injury claim prior to the decree of absolute divorce. This claim, therefore, was inchoate and conjectural at the time the marriage was terminated. In the case *sub judice,* however, the husband's proceeds amounted to more than a mere expectancy. The personal injury settlement was received (as well as substantially spent) well before the Blakes separated and then divorced. Based upon the date Mr. Blake's proceeds were received and the liquidated nature of the award, Ms.

Blake argues that *Unkle* is distinguishable and that all of her former husband's personal injury proceeds are marital property.

In arguing that liquidated personal injury proceeds fall within the definition of marital property under the statute, Ms. Blake relies in part on *Alston v. Alston*, 331 Md. 496, 629 A.2d 70 (1993). *Alston* held, *inter alia*, that a husband's lottery winnings, although acquired without any contribution from the wife, constitute marital property. Her reliance, however, is misplaced. *Alston* primarily dealt with granting a monetary award *after* the property was determined to be marital. *Alston* also held that a monetary award dividing the property in half would not be "equitable" when one party gains property "wholly through his or her own efforts." 331 Md. at 507–08, 629 A.2d at 76. The instant case focuses not on calculating a monetary award from property that is wholly marital, but instead on determining what, if any, percentage of the property is marital at all. Unlike *Alston*, the entire amount of Mr. Blake's proceeds did not constitute marital property.

Section 8–201(e)(1) of the Family Law Article defines marital property as "the property, however titled, acquired by 1 or both parties during the marriage." The statute further provides that

"marital property does not include property:

(i) *acquired before the marriage;*

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) *directly traceable to any of these sources.*" (Emphasis added).

FL § 8–201(e)(3).

The settlement proceeds are unquestionably property, but I do not believe that the legislature intended for the entire settlement to be considered marital property. Although we noted in *Unkle, supra,* that the inchoate right to personal injury proceeds had "some attributes of personal property," we held that the claim was Mr. Unkle's "separate property,"

and not marital property. 305 Md. at 596, 505 A.2d at 854. Likewise, when that right is reduced to an actual liquidated amount as in the instant case, it is not primarily marital property. In *Archer v. Archer*, 303 Md. 347, 493 A.2d 1074 (1985), we defined "property" quite broadly as including " 'every interest or estate which the law regards of sufficient value for judicial recognition.' " 303 Md. at 356, 493 A.2d at 1079 (quoting *Deering v. Deering*, 292 Md. 115, 125, 437 A.2d 883, 889 (1981) (citation omitted)). A spouse's body, although generally not considered property, is analogous to property and is "of sufficient value for judicial recognition" when compensation is paid for loss or injury to a part of the body. When so considered, compensation for injury to the body is closely analogous to compensation for injury to property "acquired before the marriage." Clearly, the latter is not marital property within the statute. I believe that the legislature intended that compensation received for loss of, or injury to, the body should be treated the same as property "directly traceable" to property "acquired before the marriage." The compensation is reparation for the damage to Mr. Blake's body, and since Ms. Blake cannot share or assume any part of Mr. Blake's bodily pain, suffering, and loss, it would be inequitable for her to share in the compensation "directly traceable" to Mr. Blake's "uniquely personal" bodily pain, suffering, and loss. *See Unkle, supra.* A significant portion of Mr. Blake's personal injury settlement proceeds, therefore, does not constitute marital property.

It is conceivable, however, that Mr. Blake's personal injury settlement was part marital and part non-marital. *See Harper v. Harper*, 294 Md. 54, 80–81, 448 A.2d 916, 929 (1982). We held in *Harper* that there are occasions when property can flow from both marital and non-marital sources. We use the source of funds theory to make the determination under those circumstances.

"[W]hen property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in

the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment."

*Harper*, 294 Md. at 80, 448 A.2d at 929. We concluded that property directly attributable to non-marital contributions is characterized as non-marital property, and conversely, property directly attributable to marital contributions is characterized as marital property. *Harper*, 294 Md. at 80–81, 448 A.2d at 929.

The Washington Supreme Court applied similar reasoning in finding that recovery for a personal injury occurring during the marriage is at least in part a loss to the marriage. *Brown v. Brown*, 100 Wash.2d 729, 675 P.2d 1207 (1984). The *Brown* court held that

"[s]ince the recovery is intended to make whole an injury, it should partake of the same character as that which has suffered injury or loss. Thus, damages for physical injury and pain and suffering, which compensate the injured spouse for the harm to his or her separate individuality, should be separate property. Damages for injury-related expenses should be community or separate according to which fund incurs the expenses. Similarly, damages for lost wages and diminished earning capacity should partake of the same community or separate character as the wages and earning capacity they are intended to reimburse or make whole." (Citation omitted).

675 P.2d at 1212 (applying community property standards).

Applying these principles to the instant case, the settlement proceeds contained both marital and non-marital elements. Examples of non-marital contributions which flowed from Mr. Blake's inchoate personal injury claim include the loss of his leg, the pain and suffering attendant thereto, and the loss of earnings for the period after dissolution of the marriage. *See*

*Queen v. Queen,* 308 Md. 574, 587, 521 A.2d 320, 327 (1987) (The uninjured spouse cannot "share in the compensation for the injured spouse's loss of future earning capacity representing a time period beyond the dissolution of the marriage."). On the other hand, loss of consortium, medical expenses directly or indirectly paid by the marital entity, and lost wages prior to the break-up of the marriage could constitute marital property.

Ms. Blake would not be entitled to the portion of the settlement that was "uniquely personal" to Mr. Blake and traceable to loss or injury to his body. Unquestionably, a significant portion of Mr. Blake's settlement compensated him for the loss of his leg, his bodily pain and suffering, and his loss of future earning capacity. It is also possible, however, that a portion of the proceeds were intended as payment for loss to the marital unit, such as paid medical expenses, loss of wages during the marriage, and loss of consortium. Ms. Blake offered no evidence of medical expenses, loss of wages prior to the break-up of the marriage, or any claim for loss of consortium. Thus, the trial judge was unable to say what, if any, portion of the award may have constituted marital property as compensation for these items. The fact that Ms. Blake signed a general release waiving liability in consideration of one dollar and Mr. Blake signed a general release in consideration of the full one million dollars, may have lent further support to the trial judge's ruling.

The trial judge did not err in ruling that Ms. Blake failed to meet her burden of proving what, if any, portion of the personal injury award was marital property.

Judge BELL has authorized me to state that he joins the views expressed in this concurring opinion.